THE BECK AND PAULI LITHOGRAPHING COMPANY *v.* THE EVANSVILLE BREWING COMPANY ET AL.

[No. 3,223. Filed December 11, 1900.]

CONTRACTS.—*Construction.*—A contract " for five M., each, letterheads, 8½ x 11, business cards, envelopes, statements, at twelve dollars per M., and hangers * * * at 22c. each," is construed as a matter of law to be a contract for the purchase of 5,000 hangers at 22c. each, as well as for 5,000 each of letter-heads, cards, envelopes and statements at twelve dollars per thousand. *pp. 663-669.*

SAME. — *Construction.* — A contract is only to be construed most strongly against the moving party when it will equally admit of two or more interpretations. *p. 669.*

From the Posey Circuit Court. *Reversed.*

*G. V. Menzies, Tarrant, Kronshage, McGovern & Dielmann,* for appellant.

*J. W. Spencer* and *J. R. Brill,* for appellees.

WILEY, J.—Appellant was plaintiff and sued upon the following instrument: "Evansville Ind., Mch. 13 '91., Evansville Brwg. Co. Dear Sirs. We will submit to you designs for your stationery including design for cut of building also calendar sketch for Gambrinus hanger as per pencil rough shown you, all to be lithographed in first class style, and proofs submitted. Will furnish you 5 M. each, letter-heads 8½ x 11, business cards, envelopes, statements at $12 pr. M., and hangers on chromo plate paper tinned top & bottom with trade mark and proper wording at 22c. each. No extra charge to be made for sketches and same to be to your satisfaction before proceeding with work.

"Stationery to be in gilt red & black. Hangers to be delivered by June 10, 1891. Yours truly, Beck & Pauli Lith. Co. pr Saville Johnston. Accepted. Evansville Brewing Co, H. Wimberg, Pres."

The pleadings in the case are voluminous, but no question is presented affecting them, and no useful purpose will be subserved by a further reference to them. It is conceded that the judgment rests upon the first paragraph of complaint. The case was tried before a jury, and, under an instruction by which the court construed the contract, the jury returned a verdict for appellant for $514.65. Appellant's motion for a new trial was overruled, and such ruling is challenged by the assignment of errors. The decision of the questions involved depends upon the construction of the contract sued on. The court, on its own motion, gave instruction number one, and this was the only instruction given. Appellant tendered three instructions, which the court refused to give. The appellant introduced in evidence the contract sued on, and called as a witness the president of the appellee brewing company, Mr. Wimberg.

This witness testified that the brewing company received all the stationery mentioned in the contract, consisting of letter-heads, statements, business cards and envelopes being 5,000 of each. That at the time the stationery was shipped to the company, 200 "Gambrinus hangers" were also shipped; that the company received the stationery at $12 per 1,000; that soon after 300 more "hangers" were received, and subsequently the balance of the 5,000 were delivered to the appellee, received by it and stored in its place of business. This witness also testified that the last shipment of hangers had not been used by the appellee. This was all the evidence given in the cause.

The court, in its instruction, construed the contract, and by such construction told the jury that appellee was liable to appellant for the letter-heads, business cards, statements, and envelopes, 5,000 each, and for the first 500 hangers received by it, in the aggregate sum of $350.50, together with six per cent. interest from August 13, 1891, making a total of $514.65, for which amount the jury were instructed to return a verdict for appellant, and held, and so told the jury, in effect, that appellee was not liable for the remaining 4,500 hangers. This instruction can not be upheld for at least two reasons: (1) The contract from its terms and the subsequent acts of the parties will not bear the construction placed upon it, and (2) it wholly disregards the fact that appellant received the hangers, stored them away, and made no offer to return them. If it be conceded that the contract is ambiguous, indefinite, and uncertain (and this is stoutly denied by appellant), yet in construing it, the surrounding circumstances and the subsequent conduct of the parties may be resorted to.

In *Mobile, etc., R. Co.* v. *Jurey,* 111 U. S. 584, 4 Sup. Ct. 566, 28 L. ed. 527, it was held that, in instructing a jury as to the construction of a writing offered in evidence as a contract, the court should consider surrounding circumstances as well as the language and subject-matter.

In 11 Am. & Eng. Ency. of Law (1st ed.) 512, it is said: "He who interprets should, as far as possible, put himself in the position of the parties at the time the writing was executed. This is only another way of saying that the intention of the parties should govern. Regard must be given to the occasion which gave rise to it, the relative position of the parties, and their obvious designs as to the object to be accomplished. But if the meaning and intention of the parties cannot be ascertained from the language of the instrument, when thus illustrated, it is void for uncertainty. Where there are two interpretations, that one will be followed which is consistent with the conduct of all the parties. In all cases attention must be given to the subject-matter in the light of contemporaneous facts and circumstances."

In *Bement* v. *Claybrook,* 5 Ind. App. 193, this court, by Black, J., said: "Where the language of a written contract is indefinite, ambiguous, or of doubtful construction, the practical interpretation given it by the parties in acting pursuant to it, is entitled to great, if not controlling, influence in arriving at the true intention." See, also, *Chicago* v. *Sheldon,* 9 Wall. 50, 19 L. ed. 594; *Reissner* v. *Oxley,* 80 Ind. 580; *Lyles* v. *Lescher,* 108 Ind. 382; *Gaylord* v. *City of Lafayette,* 115 Ind. 423; *Louisville, etc., R. Co.* v. *Reynolds,* 118 Ind. 170.

The work which the contract required the appellant to do was a special work, and the product of its labor and skill was specially adapted to the business in which the appellee was engaged. We know as a matter of common knowledge that lithographing is an art which requires a high degree of skill. Appellant and appellee both knew that the particular work specified in the contract, and the product of that work, could only be done for and used by appellee. The work would possess no value to any one else. Lithographing, which is done by engraving on stone, is an expensive work. The "Gambrinus hangers" mentioned in the contract were to be on "chromo plate paper tinned top and bottom with

trade mark and proper wording." It is evident from the contract itself that this item was the principal one named. Is it reasonable to suppose that appellant would leave this item of the contract, which involved the greatest outlay of money, and which was to be its greatest reward for its skill and labor, in doubt or conjecture? Or, as counsel for appellant aptly say, "is it at all likely that where the price per piece for lithographing work is so entirely dependent upon the quantity of such work to be taken, that the appellant would fix a price twenty-two cents each and leave the quantity at the option of the appellee?" If so, then appellee would have been the sole arbiter of that part of the contract, and could have complied with its terms if it had chosen to accept from appellant but one or 100 of such hangers. The court in its instruction might as well have arbitrarily told the jury that appellee could only be required to pay for one hanger, or the 200 first received, as to have fixed the number at 500. Taking the contract as a whole, and the circumstances under which it was made, we are unable to reach any conclusion other than that a fixed and definite number of hangers was to be furnished and accepted. We will enlarge upon this suggestion further on when we come to construe the contract by its express terms.

Now as to the construction of the contract from the conduct of the parties. There is no doubt as to the construction the appellant put upon it, for it proceeded under the contract to lithograph, tin, etc., 5,000 hangers, according to *"pencil rough shown you,"* and when completed, shipped them to appellee. There is no controversy but what the work was done in accordance with the contract, for appellee received and used 500 of them, and received and stored 4,500. After appellee received these hangers, it remained passive and did not do or say anything, so far as the record shows, to even indicate that it placed a different construction on the contract. By its acceptance of the hangers, and its silence, and its failure or offer to return them, the ap-

pellant had the right to believe that the appellee put the same construction on the contract that it did. The goods were delivered to appellee in the summer of 1891, and this action was not commenced until the 8th day of May, 1899, and during all that time appellee retained the hangers, and so far as the record shows never made any complaint about the number. By the acts of the parties as above specified, they construed the contract to provide for 5,000 hangers, *i. e.,* the appellant agreed to lithograph and furnish that number and appellee agreed to accept and pay for that number, and in such case the court will hold them to that construction. *Frazier* v. *Myers,* 132 Ind. 71; *Toledo, etc., R. Co.* v. *Burgan,* 9 Ind. App. 604; *Heath* v. *West,* 68 Ind. 548; *Johnson* v. *Gibson,* 78 Ind. 282. These are facts which the court may consider in determining the construction that appellee put upon the contract. Because the contract provided for a greater number of "hangers" than the appellee wanted or needed can not be considered. But the contract itself is not indefinite, ambiguous or uncertain. It seems to us that it will bear but one construction. The law forms an important element of every contract, and this element becomes as much a part of the contract as if it was expressly incorporated therein, and it is to be considered in construing the contract. *Pennsylvania Co.* v. *Clark,* 2 Ind. App. 146. In *Brown* v. *Brown,* 49 Mass. 573, it was said: "The meaning of words and the grammatical construction of the English language, so far as they are established by the rules and usage of the language, are, *prima facie,* matter of law, to be construed and passed upon by the court." Another rule of construction is that words are to be construed in their literal meaning. 11 Am. & Eng. Ency. of Law, 515. With these rules in view, let us look at the language of the contract itself.

The contract includes stationery with cut of buildings, also colored sketch for "Gambrinus hangers as per pencil rough shown you." By the express terms of the contract,

all these articles are "to be lithographed in first class style and proofs submitted." It provides that appellant "will furnish you" (appellee) "5 M. each, letter-heads, business cards, envelopes, statements at $12 per M., and hangers on chromo plate paper, tinned top and bottom with trade mark and proper wording at 22 cents each." By this contract, appellant agreed to furnish to appellee 5,000 each of the articles specified, and no other construction, either legal or grammatical, can be put upon it. The word "each," as used in the contract, refers to all the articles named which precede it. In the first paragraph of the contract, the several articles proposed to be furnished are named—the word stationery including "letter-heads, statements, business cards and envelopes." The second paragraph commences with the word "all", which was used and must be construed as referring to the articles named. In the Century Dictionary, the word "each" is thus defined: "Each—being either or any unit of a numerical aggregate consisting of two or three, indefinitely; used in predicating the same thing or both or all the numbers of the pair, aggregate or series mentioned or taken into account, considered individually, or one by one; often followed by 'one', with or before a noun (partitive genitive) ; as each sex; each side of the river; each stone in the building; each of them has a different course from every other." As a pronoun the definition is given thus: "Every one of any number or numerical aggregate, considered individually; equivalent to the adjectival phrase 'each one'; as each went his way; each had two; each of them was of a different size; that is, from all the others or from every one else in the number." In 10 Am. & Eng. Ency. of Law (2nd ed.), 392, it is said: " 'Each' denotes every one of two or more comprising the whole." See, also, *Adams Express Co.* v. *City of Lexington*, 83 Ky. 657.

There are five articles specified in the contract, the last of which is "hangers." In the second paragraph of the contract they are all mentioned and described in the same sen-

tence, and the last article named "hangers" is connected with the others by the conjunction "and." The sentence is: "Will furnish you five M. each, letter-heads, 8½ x 11, business cards, envelopes, statements at twelve dollars per M. and 'hangers' * * * at 22c each." The conjunction "and" signifies that the last article "hangers" is to be added to the articles that precede it. It does not seem to us that there can be any confusion or doubt about the meaning of the words used. The sentence just quoted is complete and grammatical. The whole contract, when construed together, is easy to analyze and it can have but one meaning. That meaning being plain and definite, the court must give it effect as it is written. So we must construe the contract, from the language used, to mean just what it seems to us to say, and that is that appellant agreed to furnish 5,000 letter-heads, 5,000 business cards, 5,000 statements and 5,000 envelopes at $12 per 1,000, and 5,000 hangers at twenty-two cents each.

Counsel for appellee invoke the canon of construction that if the language used in a contract is ambiguous, it must be considered and construed most strongly against the party using it; and that hence the rule should be applied here, for it appears from the contract itself that appellant was the moving party. There is no doubt but what this rule prevails in all cases where it is applicable, but if we concede that appellant was the moving party, the rule would not be applicable, unless we go further and concede that the contract is ambiguous and uncertain. The rule was early announced in this State, and has never been questioned, that a contract is only to be construed most strongly against the grantor or moving party, when it will equally admit of two or more interpretations. *Falley* v. *Giles*, 29 Ind. 114. This rule is one of *dernier ressort,* and is to be invoked only when all other rules of exposition fail. 2 Blacks. Com. 380. *Adams* v. *Warner*, 23 Vt. 395. As before said, we do not regard the contract before us as being ambiguous, and hence

it is not to be construed by the rule to which we have just alluded. The court below put a wrong construction upon the contract, and in its instruction to the jury committed a reversible error.

Judgment reversed, and the court is directed to grant appellant a new trial.

Robinson, J., absent.