STATE OF INDIANA, GROSS INCOME TAX DIVISION, ETC. ET AL. *v.* PEARSON CONSTRUCTION COMPANY ETC.

[No. 29,394. Filed March 26, 1957. Rehearing denied May 14, 1957.]

*Edwin K. Steers*, Attorney General and *Carl M. Franceschini*, Deputy Attorney General, for appellants.

*Elmer F. Marchino, Mantel & Doyle, Samuel J. Mantel, George P. Doyle* and *Thomas D. Mantel*, all of Indianapolis, for appellee.

BOBBITT, J.—Appellee herein, a Michigan corporation, duly licensed to do business in Indiana, brought this action pursuant to Acts 1947, ch. 370, §3, p. 1471, being §64-2614, Burns' 1951 Replacement, for the refund of gross income and bonus taxes levied on income derived from contracts to erect buildings for the United States Government, during the years 1941 to 1946, inclusive, on lands either ceded to the United States by the State of Indiana, or purchased or otherwise acquired by the Federal Government, which lands were, at all times hereinabove mentioned, owned, held, occupied and maintained by the United States Government.

Plaintiff-appellee alleged in its complaint that the assessment of such gross income and bonus taxes was illegal and contrary to Art. I, §8, Par. 17 of the Constitution of the United States, and to Acts 1883, ch. 7, §1, p. 8, being §62-1001, Burns' 1951 Replacement, and the Gross Income Tax Act of 1933[1] of the State of Indiana, as amended.

The trial court sustained the assessment of the tax on that part of the income derived from contracts on land that was purchased by the United States Government as distinguished from contracts performed upon lands which were ceded, but held that by reason of the Cession Act of 1883, as amended by Acts 1901, Burns' Ann. St., §§62-1001, 62-1002, income derived from con-

---

1. Ch. 50, Acts 1933, as amended, §64-2601, et seq., Burns' 1951 Replacement.

tracts performed upon lands ceded to the Federal Government by the State was not subject to the tax.

Taxes levied and assessed upon income from construction contracts performed upon lands that were purchased, occupied or controlled by the United States, or its authorized agency, are not in issue here.

*First:* A brief history of the law relating to the exemption of Federal lands from taxation by the several States may help effectively to clarify the issues here presented.

Such exemptions appear in the Constitution of the various States admitted to the Union after the original thirteen colonies, to comply with certain mandatory conditions of statehood, imposed by the Enabling Act of Congress. Some are also to be found in Cession Acts of the legislatures of various States after they have obtained statehood.[2]

Such a provision is also found in the Northwest Territorial Ordinance of 1787, §14, Art. 4, which provides as follows:

"No tax shall be imposed on lands, the property of the United States . . . ."

The United States Supreme Court first held in *M'Culloch* v. *The State of Maryland* (1819), 4 Wheat. (U. S.) 316, 4 L. Ed. 579, that instrumentalities of the Federal Government were exempt from taxation by the States in which they were located.

In *Van Brocklin* v. *State of Tennessee* (1886), 117 U. S. 151, 29 L. Ed. 845, 6 S. Ct. 670, it was specifically held that the States had no power to tax lands owned by the Federal Government.

The Indiana Cession Act of 1883, as amended in 1901, is, in pertinent part, as follows:

2. For example see Acts 1883, ch. 7.

"The lands aforesaid, when so acquired, shall be forever exempt from all taxes so long as the same shall remain the property of the United States."

In 1940 Congress passed what is commonly known as the "Buck Act," 4 U. S. C. A., §§104-110, §106, of which provides as follows:

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

"(b) The provisions of subsection (a) shall be applicable only with respect to income or receipts received after December 31, 1940."

In 1941 the Indiana Legislature, by the enactment of ch. 211, Acts 1941, attempted to amend the Cession Act of 1883 by excepting from the provisions thereof, gross receipts or income from the performance of contracts or other activities upon land which had been ceded to the Federal Government.

*Second:* Appellee asserts, in support of that part of the judgment of the trial court which holds invalid taxes levied and collected from income derived from construction contracts performed on lands ceded to the Federal Government, that because ch. 211 of the Acts of 1941 is unconstitutional, §2 of the Cession Act of 1883, as amended by ch. 158, Acts 1901, is still in force and effect. Hence, since such §2, *supra,* exempted lands of the Federal Government from taxation by the State of Indiana the gross income tax could not be levied and collected upon the income from contracts here in ques-

tion, because the Indiana Legislature failed to take further positive steps to take advantage of what appellee terms "the permissive feature of the Buck Act."

It is asserted that ch. 211 of the Acts of 1941 is unconstitutional because §2 of the original Act of 1883 was amended, instead of §2 of the Amendatory Act of 1901.

This court will not decide constitutional questions when the case under consideration can be concluded upon other grounds; *Meno* v. *State* (1925), 197 Ind. 16, 23, 164 N. E. 93; and for reasons which will presently appear it is not necessary for us to determine the constitutional question which appellee has properly presented.

*Third:* Was any positive action by way of repeal or amendment of the 1883 Cession Act, as amended, necessary by the legislature in order to levy or collect the tax here in question?

It has been held under a set of circumstances similar to those present in the case at bar, that when Congress consents to the taxation of Federal property by a State, no positive action is required by the State in order to tax such property.

A similar question was before the Court of Claims in *Board of County Com'rs.* v. *United States* (1952), 105 F. Supp. 995, 123 Ct. Cl. 304. That case involved the statute of the State of Kansas which exempted from taxes "all property belonging exclusively . . . to the United States."[3]

In 1932 Congress passed an Act[4] which provided that any real property of the Defense Plant Corporation shall be "subject to State, . . . county, . . . or local

3. Section 79-201, General Statutes of Kansas.
4. Section 10, 47 Stat. 10 (1932), as amended by §3, 55 Stat. 248 (1941).

taxation to the same extent according to its value as other real property is taxed . . . ."

The Board of Commissioners of Sedgwick County brought an action for taxes for the years 1944-1947 on certain real property which had been acquired by the Defense Plant Corporation. The defendant there asserted that if the State of Kansas had intended to tax these lands it would have amended the statute which prohibited such taxation to so provide, and concludes "that as long as section 79-201 remained without amendment during the years in question, there could be no lawful tax levied upon these lands by the plaintiff, . . . ."

In deciding this question the court, at page 999 of 105 F. Supp., said:

"As far as applicable to the lands in question, it does not appear that it was ever intended to be anything more than a legislative utterance of an existing constitutional immunity attaching to lands owned by the United States. It was not itself the foundation of the exemption but was 'inserted only from abundant caution, and because the assessment of taxes is to be made by local officers skilled in the valuation of property, but presumably unlearned in legal distinctions.' Van Brocklin, supra, 117 U. S. at page 171, 6 S. Ct. at page 681, citing Town of West Hartford v. Board of Water Commissioners, 44 Conn. 360, 368.

"Since section 79-201 was merely declaratory of a constitutional immunity, and was not itself the source of the exemption, its operative effect was necessarily coterminous with that immunity. The constitutional immunity was terminated with respect to RFC-owned lands by 47 Stat. 10. Section 79-201 thus was not independently operative to afford an exemption to the lands in question, and defendant's contention must be rejected."

And, further, at page 1000:

"Nor was it necessary under the circumstances for the state to make an acceptance of the waiver.

See Central Pacific Railroad v. Nevada, 162 U. S. 512, 16 S. Ct. 885, 40 L. Ed. 1057; Logan v. Board of Com'rs of Clark County, 51 Kan. 747, 33 P. 603."

*S. R. A., Inc.* v. *Minnesota* (1946), 327 U. S. 558, 90 L. Ed. 851, 66 S. Ct. 749, involved the power of the State of Minnesota to tax real property when the legal title thereto was in the United States. The State had ceded jurisdiction over the realty in accordance with Art. I, §8, cl. 17 of the United States Constitution.

In this case no permission to tax was granted by an Act of Congress, but possession of the property was surrendered by its sale under an executory contract. The State of Minnesota had taken no positive steps to rescind or amend the Act by which it ceded exclusive sovereignty to the United States. Upon this state of facts, the Supreme Court, at page 857 of 90 L. Ed., said:

> "As the purpose of Clause 17 was to give control over the sites of governmental operations to the United States, when such control was deemed essential for federal activities, it would seem that the sovereignty of the United States would end with the reason for its existence and the disposition of the property. We shall treat this case as though the Government's unrestricted transfer of property to nonfederal hands is a relinquishment of the exclusive legislative power. Recognition has been given to this result as a rule of necessity. If such a step is necessary, Minnesota showed its acceptance of a supposed retrocession by its levy of a tax on the property."

*Offutt Housing Co.* v. *Sarpy* (1956), 351 U. S. 253, 100 L. Ed. 1151, 76 S. Ct. 814, involved the power of the State of Nebraska to tax private property on land leased from the Federal Government. The court held that Offutt Air Force Base fell within the scope of Art. I, §8, cl. 17 of the United States Constitution and, at page 1157 of 100 L. Ed., said:

"The course of construction of this provision cannot be said to have run smooth. The power of 'exclusive Legislation' has been held to prohibit a state tax on private property located on a military base acquired pursuant to Art. 1, §8, cl 17. Surplus Trading Co. v. Cook, 281 US 647, 74 L ed 1091, 50 S Ct 455. On the other hand, the State may acquire the right to tax private interests within such a location by permission of Congress, see, e.g., the Buck Act, 54 Stat 1059 [4 U.S.C.A. §§104-110] (permitting state sales, use, and income taxes), and we have also held that the State may tax when the United States divests itself of proprietary interest over the area on which the tax is sought to be levied. S.R.A., Inc. v. Minnesota, 327 US 558, 90 L ed 851, 66 S Ct 749; see also Baltimore Shipbuilding & Dry Dock Co. v. Baltimore, 195 US 375, 49 L ed 242, 25 S Ct 50."

The Supreme Court there held that Congress, by the enactment of §6, the Military Leasing Act, 5 U. S. C. A., §626s-6, 10 U. S. C. A., §1270d, now §2667, which provides: "The lessee's interest, made or created pursuant to the provisions of this Act, shall be made subject to State or local taxation.", permitted the State of Nebraska to levy and collect the tax in question.

*Capetola* v. *Barclay White Co.*, 3 Cir. (1943), 139 F. 2d 556, 153 A. L. R. 1046, involved the application of the Pennsylvania State Workmen's Compensation Act, 77 P. S., §1 et seq., to employees engaged in the construction of a building in the Philadelphia Navy Yard. While not involving taxes, we believe the principle there announced is applicable to facts here before us. In that case it was contended that, notwithstanding an Act[5] of Congress providing that workmen's compensation laws may be applied to all lands or premises owned or held by the United States by deed, cession, purchase or otherwise, the Pennsylvania Compensation Act still remained inoperative under the circumstances

---

5. 40 U. S. C. A. §290.

in that case, because the Act of Congress did not adopt the local Act as a Federal law, and because the State of Pennsylvania had not yet formally evidenced an intention to apply its compensation laws to Federal lands or premises. At page 559 of 139 F. 2d, the court said:

> "But it is our opinion that the purpose and effect of the congressional Act was to free State workmen's compensation laws from the restraint upon their enforcement theretofore existing by reason of the exclusive federal jurisdiction of lands within the States and that, forthwith upon the federal enactment, Pennsylvania's Workmen's Compensation Act became operable as to injuries received by employees of private employers on federal property within the State's exterior boundaries. The situation created by the Act of 1936 was no different, so far as the operation of Pennsylvania's compensation law is concerned, than it would have been had Pennsylvania never ceded jurisdiction of the Navy Yard site to the federal government. It was, therefore, unnecessary for the Pennsylvania legislature to declare formally, after the passage by Congress of the Act of 1936, that henceforth injuries received on federal property within the exterior boundaries of the State by employees of private employers should be subject to the operation of the State Workmen's Compensation Law. That situation had been achieved when the Act of Congress removing the restraint upon the enforcement of State compensation laws was enacted."

*Davis* v. *Howard* (1947), 306 Ky. 149, 206 S. W. 2d 467, involved the right of the State of Kentucky to collect tax on gasoline sold on Camp Campbell military reservation.

Appellant there contended that since Kentucky had ceded sovereignty over Camp Campbell to the Federal Government, without reservation or qualification, the power to tax did not exist. Appellee's answer was that Congress, by the enactment of the "Buck Act" receded to the State sufficient sovereignty to collect

the tax in question. At pages 468-469 of 206 S. W. 2d the court said:

"It is argued that the Buck Act does not undertake to confer sovereignty upon the state, but only an incident of sovereignty—the power to levy and collect certain taxes—and was not intended to apply where the state had ceded exclusive jurisdiction to the Federal Government. Undoubtedly, it was the purpose of the Congress to recede to the state sufficient sovereignty over Federal areas within its territorial limits to enable it to levy and collect taxes named in the Act. Otherwise the Act was a futile gesture." See also: *Boeing Aircraft Co.* v. *Reconstruction Finance Corp.* (1946), 25 Wash. 2d 652, 171 P. 2d 838, 168 A. L. R. 539 appeal dismissed (1947), 330 U. S. 803, 91 L. Ed. 1262, 67 S. Ct. 972).

The reasoning in the foregoing cases applies with equal force to the case at bar, and the construction placed upon the Acts involved in those cases by the Federal courts is conclusively decisive of the question here presented.

The application of the gross income tax law under the factual situation now before us does not depend upon an Act of the Indiana Legislature, but rather upon the will of Congress. In this case that will is expressed in the "Buck Act."

The Cession Act of 1883, as amended, is not the foundation of the exemption which it purports to grant, but the power to control the taxation of Federal property lies exclusively within the discretion of the Congress of the United States. *Van Brocklin* v. *State of Tennessee, supra* (1886), 117 U. S. 151, 29 L. Ed. 845, 6 S. Ct. 670; *Capetola* v. *Barclay White Co., supra* (1943), 139 F. 2d 556, 558, 153 A. L. R. 1046; *Boeing Aircraft Co.* v. *Reconstruction Finance Corp., supra* (1946), 25 Wash. 2d 652, 171 P. 2d 838, 168 A. L. R.

539 (appeal dismissed (1947), 330 U. S. 803, 91 L. Ed. 1262, 67 S. Ct. 972).

In our opinion any immunity which appellee herein may have enjoyed from the payment of Indiana Gross Income tax, on income received from construction contracts performed for the United States by and through its duly authorized agents, on lands either ceded to or purchased by the United States, and at all times herein owned, held, occupied, used and maintained by the Federal Government, was revoked by the enactment of §106 of the "Buck Act" and it was not necessary for the Indiana Legislature to take any positive action either to amend or repeal the Cession Act of 1883, as amended.

The enactment and enforcement of the Gross Income tax law was sufficient to show an acceptance by the State of Indiana of the offer of Congress to permit the levying of such taxes as provided in the "Buck Act," if such were necessary.

*Fourth:* We have carefully examined the three cases relied upon by appellee to sustain its position that this court "by implication" regards some formal enactment necessary to the acceptance of a retrocession of jurisdiction.

The questions presented in *Brooks* v. *The Board of Commissioners of Jasper County* (1863), 20 Ind. 416, and *Thompson* v. *Holton* (C. C. Ind. 1855), 23 Fed. Cas. 1049, No. 13958, 6 McLean 386, are similar. They both involve an Act of the Indiana Legislature passed in the year 1843 which provided that, "all lands sold by the United States" shall be exempt from taxation, "until the term of five years from the day of sale shall have expired."

On January 26, 1847, Congress passed an Act which provided: "The assent of Congress is hereby given to the several States admitted into the Union prior to the

24th of April, in the year of our Lord one thousand eight hundred and twenty, to impose a tax or taxes upon all lands hereafter sold by the United States, in said States, from and after the day of such sale: . . . ."[6]

In both of these cases it was held that the Indiana Act of 1843 was in full force and operative from the time of its passage until June 21, 1852, when the Indiana Legislature provided by statute[7] that, "All real property within this State . . . shall be subject to taxation.", subject to the exceptions thereinafter stated.[8]

We do not concur with appellee that these cases hold that it is necessary to repeal the State law prohibiting State taxation of Government property before a tax would be valid, when permission to levy and collect such tax is granted by Congress.

The Act of 1852, which the court says is consistent with the Act of Congress of June, 1847, consenting to the taxation of land sold by the Federal Government was not an Act to repeal the Act of 1843, but was a new Act for the assessment and collection of property taxes, just as the Gross Income tax law is an Act imposing a tax on gross income.

If we follow the reasoning in these cases, then it must be concluded that the Gross Income Tax Act is consistent with the "Buck Act" and was in full force and operative on income of any person "residing within" a Federal area or "receiving income from transactions occurring or services performed in such area" situated within the boundaries of the State of Indiana on all such income received after December 31, 1940.

---

6. Section 1, 9 Stat. 118, (1847).
7. 1 R. S. (1852), ch. 6, §3, p. 105.
8. 1 R. S. (1852), ch. 6, §6, p. 106, provided: "The following property shall be exempt from taxation: *First.* The real and personal property of the United States and of this State."

It will be noted that while §6 of ch. 6, R. S. 1, *supra,* the Act which this court said was consistent with the Federal Act, contained a provision which exempted from taxation the "real and personal property of the United States . . . .", nevertheless, it was there held that the Federal Act became operative upon all such property sold after the effective date of the Act of 1852.[9]

It seems to us that these cases support the position of appellant rather than that of appellee.

*State ex rel. Cashman et al.* v. *Board etc.* (1899), 153 Ind. 302, 54 N. E. 809, was a proceeding to mandate the Board of Commissioners to re-divide certain territory into voting districts and to exclude therefrom 304 acres of land which the State of Indiana had ceded to the United States for the establishment of a disabled soldiers' home. Congress, in 1898, 30 Stat. 668, receded "exclusive jurisdiction" to the State of Indiana, which was formally accepted by the State legislature in 1899, Acts 1899, p. 23. The fact that the legislature in this instance formally accepted such retrocession is not decisive of the question now before us.

It seems to us from the language of the opinion, at page 313 of 153 Ind., *supra,* as follows:

> "We conclude, therefore, that the act of Congress of July 7, 1898, restoring the jurisdiction of the State over the 304 acres of territory in question and fully relinquishing all jurisdiction of the United States over the place, subsequent to the commencement of this suit, has removed the question involved in this appeal from actual controversy, and created a state of facts that will preclude the carrying into effect of any judgment that may be rendered upon appellant's petition.
>
> "We can not, under the law as well settled, give time to the examination of moot questions, the

---

9. 1 R. S. (1852), ch. 6, p. 105.

determination of which will serve no useful purpose.";

that the court did not consider the formal positive act of the legislature, in accepting the retrocession, necessary to permit the Board of Commissioners to exercise jurisdiction over such land but, on the contrary, decided that jurisdiction was fully and completely restored to the State by the Act of Congress on July 7, 1898, and such restoration did not depend upon any positive action of acceptance by the Indiana legislature.

In our opinion this case lends no support to appellee's position but, on the contrary, appears to be in line with the later decisions of the Federal courts and those of other States which sustain the position of appellant.

*Fifth:* For the reasons above stated and upon the authority of the cases above cited, the gross income tax became effective as to appellee's income derived from construction work upon land ceded to the Federal Government, as well as that derived from construction work performed upon land purchased, then owned, held, occupied, used, maintained and controlled by the United States, after December 31, 1940, the effective date of the "Buck Act."

Hence, it is immaterial, for the purpose of this appeal, whether or not ch. 211 of the Acts of 1941 is constitutional, and for this reason we deem it unnecessary to decide this question.

The trial court erred in finding that such part of appellee's gross receipts here in question and derived from construction work performed upon land ceded to the Federal Government are exempt from the provisions of the Indiana Gross Income Tax Act, as amended.

Judgment is reversed with instructions to the trial court to modify its finding and judgment in accordance with this opinion.

Achor, C. J., Arterburn, Emmert and Landis, JJ., concur.

NOTE.—Reported in 141 N. E. 2d 448.