### PROFESSIONAL ADJUSTERS, INC., Appellant,

v.

### Dr. P. TANDON, Rojini Tandon, and United States Fidelity and Guaranty Company, Appellees.

#### No. 379S60.

Supreme Court of Indiana.

April 14, 1982.

Frank E. Spencer, Jerry M. Burton, Johnson & Weaver, Indianapolis, for appellant.

Luther G. Johnson, Mann, Chaney, Johnson, Hicks & Goodwin, Terre Haute, for appellees.

PIVARNIK, Justice.

Plaintiff-appellant Professional Adjusters, Inc., appeals action of the trial court in dismissing their cause of action for "failure to state a claim upon which relief could be granted." Plaintiff's complaint was based on allegations of a contract obligating defendants Tandon to pay a contingent amount for services by Plaintiff in adjusting the settlement of a claim of Tandon's against their insurance company, United States Fidelity and Guaranty Company. Plaintiff's complaint against USF & G was based on the fact that USF & G settled with the Tandons and paid to them and their attorney a settlement amount without protecting plaintiffs on their alleged contract and assignment of the claim rights.

Defendant's response in its motion to dismiss was that the statutes under which Plaintiff proposed to act as public adjusters in its representation of defendants Tandon, authorized Plaintiffs to practice law in derogation of the Indiana Constitution, specifically, Art. VII, § 4, which places the exclusive control of regulation and supervision of the practice of law in the Supreme Court of Indiana, and Art. III, § 1, which provides for the separation of powers of the legislative, executive and judicial branches, and prohibits any of these branches from exercising any of the functions of another branch except as expressly provided in the Constitution. It was the defendant-appellee's contention that the alleged contract was therefore unenforceable. The trial court granted Defendant-appellee's motion to dismiss, finding that Ind.Code § 27–1–24–1 et seq. (Burns 1975) was unconstitutional since it authorized the practice of law by plaintiff corporation in derogation of Indiana Constitution Art. VII, § 4, and Art. III, § 1, and, further, was in conflict with Ind.Code § 33–2–3–1 (Burns 1975).

The facts show that defendants Tandon had a fire loss on their mobile home in Terre Haute, Indiana, on December 22, 1976. They had a policy of insurance to cover such loss with defendant USF & G, and filed a claim with that company. USF & G offered to settle the claim for eight-thousand dollars, ($8,000) which figure was unacceptable to the Tandons. The Tandons then hired Professional Adjusters, Inc., to handle their claim against USF & G for them. Plaintiffs prepared estimates of repair cost, temporary electrical costs, depreciation from actual cash value, replacement of outdoor furniture and fixtures, equipment and carpeting, estimates on unscheduled property with dates of purchase and current value and depreciated value, and a claim for additional living expenses, including projections for completion and repair which they claim required the expending of sixty-five hours of time. Professional Adjusters, Inc., then submitted this claim to

GAB Service, Inc., which was the adjusting agency of USF & G. In response, Professional Adjusters received from GAB Service, Inc., an offer to settle the claim for substantially more than the original offer of eight-thousand dollars ($8,000). Defendants Tandon, in the meantime contacted a lawyer and subsequently settled the claim with USF & G. Tandons tendered a check in the amount of five-hundred dollars ($500) to Professional Adjusters, Inc., which was offered as payment, which was refused.

In its complaint, and throughout this proceeding, the plaintiff claims that the parties entered into a written contract for plaintiff's services and remunerations therefor. Though the precise question is not presented to us in this appeal, we cannot help but notice that this "contract" was never signed by Professional Adjusters, Inc. They have obligated themselves to do nothing in consideration for the obligations of the Tandons under the written instrument. Copies of the agreement appearing in the Record appear to be photocopies that cut off some of the words and figures and are partially illegible. Basically, however, the document carries the caption of Professional Adjusters, Inc., with a logo and with a statement, "Certified Public Insurance Adjusters, Licensed by State of Indiana." The document then addresses itself "To The Interested Insurance Companies." There then is a recitation wherein the Tandons employ professional adjusters to assist in adjustment for loss and damage by fire, describing the fire in question here and agreeing to pay them for their services and assigning the loss proceeds to them as below agreed upon. The Tandons have signed the document. Below those signatures appears an agreement by Tandons to pay and assign to Professional Adjusters the proceeds of the loss in consideration of the adjusting assistance in the insurance claim and set out percentage figures of the amounts recovered that would be payable to Professional Adjusters, Inc. It appears then that this is not a contract entered into by the parties, but a unilateral agreement and assignment by the Tandons without consideration. As stated above, this precise issue is not before

us since the defendants never reached the stage of answering the complaints on the merits, but raised a motion to dismiss on a 12(B)(6) motion.

The statute in question is as follows: "(a) The term "public adjuster" shall include every person or corporation who, or which, for compensation or reward, acts on behalf of, or aids in any manner, an assured, in negotiating for, or effecting, the settlement of a claim or claims for loss or damage under any policy of insurance covering real or personal property and any person or corporation who, or which, advertises, solicits business or holds itself out to the public as an adjuster of such claims, Provided, however, That no public adjuster shall act in any manner in relation to claims for personal injury or automobile property damage.

(b) This chapter [27–1–24–1—27–1–24–9] shall not apply to, and the following are not included in the term public adjuster:

(1) An attorney at law admitted to practice in the state of Indiana who adjusts insurance losses in the course of the practice of his profession;

(2) An officer, regular salaried employee, or other representative of an insurer or of an attorney in fact of any reciprocal insurer of Lloyd's underwriter licensed to do business in the state of Indiana who adjusts losses arising under his employer's or principal's own policies;

(3) An adjustment bureau or association owned and maintained by insurers to adjust or investigate losses of such insurers, or any regular salaried employee who devotes substantially all of his time to the business of such bureau or association;

(4) Any licensed agent or an authorized insurer or officer or employee of the same who adjusts losses for such insurer, and any agent or representative of a farmers mutual insurance company operating under the farmers mutual insurance laws of this state on behalf of an insurer; and

(5) Any independent adjuster representing an insurer.

Thus, Ind.Code § 27–1–24–2 (Burns 1975) provides that before anyone can act as a certified public adjuster he must be issued a certificate of authority by the Commissioner of Insurance of the State of Indiana and succeeding sections of the chapter provide for the mechanics to be employed by the Insurance Commissioner. Ind.Code § 27–1–24–5 (Burns 1975) provides for a written examination for the Commissioner to give applicants to determine the trustworthiness and competence of the applicant and provides that such testing shall include but not be limited to the following areas: 1) the Indiana Insurance Code; 2) inventory and appraisal procedures; 3) building construction; 4) standard fire policy; 5) insurance contracts related to claims on real or personal property; and 6) insurance coverage questions regarding business interruptions, improvements and betterments, replacement cost coverage, concurrent and non-concurrent apportionment, co-insurance and contribution."

Indiana Code § 27–1–24–1 *et seq.* (Burns 1975) creates a new type of adjuster heretofore unknown in the insurance field. All of the traditional forms and duties of insurance adjusters are excepted from this statute. Adjusters have traditionally been employees or agents of insurance companies hired by them to attempt to ascertain the nature of a loss under one of their policies and to attempt to settle it in behalf of the company. This was true of independent adjusting agencies that were hired by insurance companies to act as their agents in making an adjustment. Those adjusters who were employees of the company were, of course, agents who acted in full authority to bind the company in settling with its insured. Independent adjusting firms were hired by companies to act as independent appraisers to help the company fix and determine the amount of a loss so that the company could then settle the claim with the insured. This statute proposes to create a public adjuster which represents an insured and receives compensation to act on behalf of that assured to negotiate for and effect the settlement of a claim for loss or damages. It does not limit the activity and authority of the adjuster to appraise the loss and report back to the client the fair value of the claim so that the client can then go forward and settle his claim. It authorizes the adjuster to go forward and to negotiate for and effect that settlement as a direct agent and representative of the insured. This is, pure and simple, the practice of law. In acting as the statute authorizes a public adjuster to act, he is acting as an attorney at law.

In the present case, Professional Adjusters, Inc., made a determination of the loss of Tandons and then submitted this claim to the insurance carrier for negotiation of a settlement. The fact that the negotiations did not reach the stage where there was a bargaining process of offers and counter-offers does not make it any less negotiation. Plaintiffs were in all ways acting as attorneys-at-law for Tandons by submitting a figure which they would deem acceptable for their loss and contemplating in return a response from the insurance carrier that would effect the settlement. They expected to receive remuneration in an amount that was contingent upon the amount they recovered. As one of the allegations of their complaint, the plaintiffs alleged: "6. On February 3, 1977, the defendant USF & G formally rejected the proof of loss filed by defendant Tandon on January 10, 1977, and on March 18, 1977, the plaintiff furnished all of the above claim information to GAB Business Service, Inc., the adjusting agent for USF & G pursuant to said contract."

Thus, in their complaint, the plaintiffs state that not only did the contract contemplate that it would be the duty of plaintiffs to take the claim forward to USF & G, but they alleged that is, in fact, what they did. In discussing the subject of the practice of law, this Court stated, in *Matter of Perrello*, (1979) Ind., 386 N.E.2d 174, 179:

"The core element of practicing law is the giving of legal advice to a client and the placing of oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the

attorney. The undertaking to minister to the legal problems of another, creates an attorney-client relationship without regard to whether the services are actually performed by the one so undertaking the responsibility or are delegated or subcontracted to another. It is the opinion of this Court that merely entering into such relationship constitutes the practice of law."

We further said, in *Groninger v. Fletcher Trust Co.,* (1942) 220 Ind. 202, 207, 41 N.E.2d 140:

"The practice of law is restricted to natural persons who have been licensed upon the basis of established character and competence as a protection to the public against lack of knowledge, skill, integrity, and fidelity. Disbarment procedure is available in the case of those who do not conform to proper practice. The practice of law involves advising or rendering services for another. A natural person may plead his own case in court or do any of the things for himself which if done for another would constitute practicing law. He may discuss the legal aspects of his affairs with other interested parties or with strangers. Either a natural person or a corporation may employ lawyers to do these things."

*See also Code of Professional Responsibility* adopted by the Supreme Court of Indiana on March 8, 1971; EC 3–1, EC 3–2, EC 3–3, EC 3–4, EC 3–5, and EC 3–6.

The very criteria required under Ind.Code § 27–1–24–1 *et seq.,* in its creation of Certified Public Adjusters is knowledge and competency in dealing with rights and liabilities of other persons as required in the ethical considerations in case law heretofore relied upon, but does not require admission to the Bar in this State and therefore does not subject those so acting to the disciplinary rules of this Court. Undertaking the determination of rights and liabilities under an insurance contract and the negotiation of settlements requires the interpretation of the terms of that contract. In *Dollman v. Pauley,* (1930) 202 Ind. 387, 394, 174 N.E. 729, this Court observed:

"No more precise language can be found to state the principle that statutes and the law as otherwise existing become a part of every contract and must be read into it, than made by Chief Justice John Marshall in the words, 'in every forum a contract is governed by the law with a view to which it was made.' *Wayman v. Southard* (1825), 10 Wheat. 1, 48, 6 L.Ed. 253. *See Beck, etc., Co. v. Evansville Brewing Co.* (1900) 25 Ind.App. 662, 58 N.E. 859; *Southern R. Co. v. Bouknight* (1895), 70 F. 442, 30 L.R.A. 823, 826; *Armour Packing Co. v. United States* (1907), 153 F. 1, 82 C.C.A. 135, 14 L.R.A. (N.S.) 400. A city ordinance comes within the rule. *Kansas City Hydraulic Press Brick Co. v. Youmans* (1908) 213 Mo. 151, 112 S.W. 225; *Wright v. Computing Scale Co.* (1907) 47 Wash. 107, 110, 91 P. 571."

The trial court properly found that IC § 27–1–24–1 *et seq.,* was unconstitutional in that it violated the Constitution of the State of Indiana Art. 7 § 4, and Art. 3 § 1, and further is violative of the Code of Professional Responsibility as adopted and promulgated by this Court.

The trial court is in all things affirmed.

GIVAN, C. J., and DeBRULER, J., concur.

PRENTICE, J., concurs in result with separate opinion.

HUNTER, J., dissents with opinion in which PRENTICE, J., concurs in part with separate opinion.

PRENTICE, J., concurring and dissenting with separate opinion.

PRENTICE, Justice, concurring and dissenting.

I concur in the result reached in the majority opinion and concur in the opinion of Justice Hunter, to the extent that it recognizes the unenforceability of the alleged contract and that we should refrain from determining the constitutionality of statutes, except in those cases where the litigation cannot be otherwise determined. I also agree that we are not confined to the issue

raised below in upholding the judgment of the trial court. In *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, the appellee had contended that the trial court had no jurisdiction over the offense, in that it had been committed on federal property. The trial court denied his motion summarily. We affirmed upon the authority of a section of the federal statute creating the federal preserve which provided for civil and criminal jurisdiction to remain in the state, notwithstanding that there had been no reliance upon the statute in the trial court.

> "Appellant contends that the State may not rely on the federal statute on appeal, having not done so in the trial court. Section 35–3.1–1–8(b) makes prosecutorial response to the motion to dismiss optional. Moreover it is well established that a decision of the trial court will be sustained if a valid ground exists to support it, whether or not the trial court considered those grounds. *Notter v. Beasley*, (1960) 240 Ind. 631, 166 N.E.2d 643, 93 A.L.R.2d 905; *Ertel v. Radio Corporation of America*, (1976) Ind.App., 354 N.E.2d 783." 268 Ind. 180, 200, 375 N.E.2d 1042, 1054.

I would affirm the judgment upon the basis of the unenforceability of the alleged contract and leave the issue of the constitutionality of the contract for another day.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion. The majority recognizes the contract at issue is unenforceable; it is not necessary to reach the question of the statute's constitutionality and it is our duty to so refrain. Furthermore, the legislatively-created occupation of "Public Adjuster" does not constitute "the practice of law"; consequently, it is not within our province constitutionally to abolish the occupation by rendering the statutory package void. If, however, the rationale of the majority is valid, then other occupations created by our legislature also constitute "the practice of law."

The validity of this latter proposition is revealed within the confines of the majority opinion, where it is acknowledged that, traditionally, insurance companies have long employed adjusters "who acted in full authority to bind the company in *settling* with its insured." (Emphasis added.) Indeed, our legislature has expressly granted insurance "administrators" (Ind.Code § 27–1–25–1 [Burns 1975]) or "designated claim representatives" (Ind.Code § 27–8–4–10 [Burns 1975]) statutory authority to "*settle*" claims.

In terms of "the practice of law," there is no valid distinction between the public adjuster and the person who settles claims on behalf of an insurance company. The fact that an "administrator" or "designated claim representative" acts with full authority from an insurance company is not significant for, as the majority points out, only "natural persons" can engage in the practice of law. *Majority Opinion, supra*, quoting *Groninger v. Fletcher Trust Co.*, (1942) 220 Ind. 202, 207, 41 N.E.2d 140, 141. While the insurance company agent may practice the art of settlement with the blessing of his employer, he or she, nonetheless, is engaged in the practice of law, as the majority defines it; to settle a claim, the agent must interpret the contract of insurance, assess the claim of damages, and negotiate the settlement, all with full authority to bind his insurance company. These very considerations are the basis for the majority's conclusion that the public adjuster who exercises his authority under Ind.Code § 27–1–24–1 *et seq*. (Burns 1975) engages in "the practice of law."

This Court confronted a similar question in *State v. Indiana Real Estate Association*, (1963) 244 Ind. 214, 191 N.E.2d 711, where it was argued that real estate brokers' and salespersons' completion and use of legal forms constituted the practice of law. There, this Court expressly refused to reduce the question to a semantic struggle over what constitutes "the practice of law," stating:

> "In some of the briefs, an attempt is made to make the issue turn upon definitions of 'the practice of law'. In any event, we believe that the real question

here at issue is whether the selection, completion, and use of the standardized forms by brokers, in connection with real estate transactions for their clients, and here sought to be enjoined, is prohibited to them, as being the practice of law. Although the practice of law is one of the oldest and most honored professions, the law itself is by no means an absolute science, the practice of which can be accurately and unequivocally defined. For example, under the early English law, some instruments were prepared by scriveners, who were neither barristers nor solicitors, although the preparation of such instruments is now universally considered to constitute the practice of law. On the other hand, persons not admitted to the practice of law are now permitted to represent clients before tax courts, etc., where formerly only attorneys were authorized to appear. These changes have come about because of the exigencies of the particular situation. So it is today with regard to the practice of law. There is a twilight zone between the area of activity which is clearly permitted to the layman, and that which is denied him.

\* \* \* \* \* \*

"Thus, the question which this court must determine is where, within this 'twilight zone' it is proper to draw the line between those acts which are and are not permissible to persons who are not lawyers. Obviously, the drawing of such line must be, in some respects, arbitrary, as is true of a law which fixes the permissible age at which a person may drive an automobile, or speed at which it may be driven within a particular zone, or specified time of day." *Id.*, 244 Ind. at 219–21, 191 N.E.2d at 714–5.

Likewise, the question at issue here rests within that "twilight zone," for the public adjuster is statutorily vested to do only that which has traditionally and routinely been done by insurance company adjusters, administrators, and designated claim representatives.

As in this Court's decision in *State v. Indiana Real Estate Association, supra,* it is

appropriate to examine the underlying considerations concerning the question before us. Before declaring the entire statutory package invalid, it is advisable for this Court to examine its parameters, the limitations which are imposed on "public adjusters," and the ramifications the statute holds for the public interest.

As recognized by the majority, public adjusters are regulated by the Commissioner of Insurance. To act in the capacity of a public adjuster, a license is required; to obtain a license, an applicant is required to submit to a written examination over at least six different subject-matters:

"(1) The Indiana Insurance Code,

(2) Inventory and appraisal procedures,

(3) Building construction,

(4) Standard fire policy,

(5) Insurance contracts related to claims on real or personal property,

(6) Insurance coverage questions regarding business interruption, improvements and betterments, replacement cost coverage, concurrent and noncurrent apportionment, coinsurance and contribution."

Ind.Code § 27–1–24–5(a), *supra.*

In addition to testing an applicant's knowledge and competency to act as a public adjuster, the Commissioner is required to assess the applicant's trustworthiness to act in the public's behalf. Ind.Code § 27–1–24–3, 4, and 5(b), *supra.* And once a license is issued, it is constantly subject to potential probation, suspension, or revocation if the licensee has committed any of the following:

"(1) violated any provision of this chapter; or

(2) made a material misstatement in the application for such certificate; or

(3) *justified a finding of his, or its, incompetency or untrustworthiness to act as a public adjuster*; or

(4) *committed any acts against the interests of the public or his assured client.*"

Ind.Code § 27–1–24–6(a), *supra* (emphasis added).

There is no evidence the Commissioner of insurance is unable to insure the competency or trustworthiness of those licensed as public adjusters. Furthermore, all doubts regarding the constitutionality of a statute are to be resolved so as to perpetuate the presumption of constitutionality which clothes all legislative acts. *Dague v. Piper Aircraft Corp.*, (1981) Ind., 418 N.E.2d 207; *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., 404 N.E.2d 585. We must assume the Commissioner is insuring the trustworthiness and competency of public adjusters and thereby protecting the interests of the public, as well as the assured clients.

Not discussed by the majority are the significant statutory limitations placed on the role of the public adjuster. In Ind..Code § 27–1–24–1(a), *supra*, the legislature prohibited public adjusters from acting "in relation to claims for personal injury or automobile property damage." Our General Assembly also expressly prohibited public adjusters from the practice of law by its passage of Section 8:

"27–1–24–8 Practice of law prohibited
"Sec. 8. A public adjuster may not deal directly with any claimant represented by an attorney-at-law without the consent of the attorney, nor may he advise a claimant to refrain from seeking legal advice, advise against the retention of counsel to protect his interests, or, in the case where legal counsel is desired by claimants, advise the retention of specific attorneys or law firms." Ind.Code § 27–1–24–8, *supra*.

The statute thus limits the public adjuster's ability to act to those claims in which the opposing party is also represented by an adjuster not licensed to practice law. The remaining portions of Section 8 prohibit the public adjuster from dispensing recommendations regarding legal courses of action; that limitation is consistent with the sole statutory function of the public adjuster, which is to assess the assured's real property loss and attempt to negotiate and settle the claim with the insurer.

Nobody would argue that the act of examining the damaged property and assessing the pecuniary loss constitutes the practice of law. Nor can it be said that the act of negotiating and settling disputes is the practice of law; that art is practiced in various forms by virtually every citizen from our playgrounds to our centers of trade. It is, then, the public adjuster's examination of the assured's contractual terms which carries him into "the practice of law," according to the majority.

That supposition was implicitly rejected by this Court in *State v. Indiana Real Estate Association, supra*, where it was held that real estate brokers and salespersons may utilize legal forms in the contract formation process. The public interest, this Court reasoned, is served by the expeditious handling of some transactions:

"We judicially know that both the relators and respondents are sensitive to the normal needs of the business society. It cannot be urged, with reason, that a lawyer must preside over every transaction where written legal forms must be selected and used by an agent acting for one of the parties. Such a restriction would so paralyze business activities that very few transactions could be expeditiously consummated." *Id.*, 244 Ind. at 221–2, 191 N.E.2d at 715.

Similarly, it should be recognized a public adjuster's assistance in adjusting a claim with the insurer's designated claim representative may well facilitate the expeditous settlement of the dispute, to the benefit of both parties and the public interest. In addition, the availability of trustworthy and competent settlement experts serves the public interest by placing assureds on the same footing as insurance companies, who have always enjoyed the benefits of such services. This latter public policy consideration no doubt prompted the legislature's passage of Ind.Code § 27–1–24–1 *et seq., supra*, and should not be ignored by this Court.

Certainly "the practice of law" is a profession which, in the public interest, must be jealously guarded. As this Court reasoned in *State v. Indiana Real Estate Association, supra*, however:

"The Bar Association, in its brief, has expressed great concern as to the consequences of permitting the filling in of blanks in legal forms by persons not members of the bar. The possibility of an occasional improvident act in the use of such forms may not, with reason, be made the basis for denying the right to perform the same act in a thousand instances where the public convenience and necessity would seem to require it. Lawyers, themselves, on rare occasions have been known to make errors in the drafting of such forms." *Id.*, 244 Ind. at 222, 191 N.E.2d at 715.

Likewise here, where the public interest is both protected and perpetuated by the statutory office of public adjuster, the public should not be deprived of the same nonlegal assistance in the matter of out-of-court settlements which insurers enjoy.

It is noted that although "public adjusters" are commonplace throughout this nation's jurisdictions, no other jurisdiction has held its statute unconstitutionally void as ratifying the unauthorized practice of law. *See, e.g.*, Ala.Code § 27–9–1 *et seq.* (1975); Colo.Rev.Stat. § 10–2–101 *et seq.* (1973); Fla.Stat.Ann. § 626.854 (1972); Md.Code Ann. art. 48A § 181 (1957); Minn Stat.Ann. § 72B.01 *et seq.* (1981 Supp.); Nev.Rev. Stat. § 684A.010 (1979); N.Y.Ins.Law § 123 (McKinney 1966); Ohio Rev.Code Ann. § 3951.01 *et seq.* (1971); Pa.Stat. tit. 40, § 301 *et seq.* (1971). *See also, Larson, State Treas. v. Lesser*, (Fla.1958) 106 So.2d 188.

It is well settled that even where the question of the constitutionality of a statute is presented for our determination, the statute will not be nullified on constitutional grounds unless the resolution of the constitutional question is absolutely necessary to decide the case on its merits. *Indiana Ed. Employment Bd. v. Benton Community Sch.*, (1977) 266 Ind. 491, 365 N.E.2d 752; *Board of Comm'rs of Howard Co. v. Kokomo Plan Commission*, (1975) 263 Ind. 282, 330 N.E.2d 92; *State v. Pearson Construction Co.*, (1957) 236 Ind. 602, 141 N.E.2d 448; *Shutt v. State*, (1954) 233 Ind. 120, 117 N.E.2d 268; *Sarlls v. State*, (1929) 201 Ind. 88, 166 N.E. 270. The majority expressly recognizes in its opinion that the contract at issue was unenforceable for the reason it was unilaterally binding. That the issue was not raised below is not significant, for we may sustain the decision of a trial court on any applicable legal theory. *Cain v. State*, (1973) 261 Ind. 41, 300 N.E.2d 89. Here, it was our duty to employ the fact the contract was unenforceable and dispose of the case on that basis. *Indiana Ed. Employment Bd. v. Benton Community Sch., supra; Board of Comm'rs of Howard Co. v. Kokomo Plan Commission, supra.*

I dissent. The judgment of the trial court should be affirmed on the basis the contract is unenforceable. Absent a disposition on that basis, the trial court should be reversed on its determination that the statute is unconstitutional and the cause should be reinstated for trial.

PRENTICE, J., concurs in part with opinion.