GRAND RIVER DAM AUTHORITY, a public corporation and an agency of the State of Oklahoma, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent.

No. 5549.

United States Court of Appeals Tenth Circuit.

July 12, 1957.

Rehearing Denied Aug. 8, 1957.

Q. B. Boydstun, Veneta, Okl., on the brief for petitioner.

Willard W. Gatchell, General Counsel, John C. Mason, Deputy General Counsel, and William L. Ellis and Joseph B. Hobbs, Washington, D. C., on the brief, for respondent.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

BRATTON, Chief Judge.

The question presented for determination is whether the Federal Power Commission, hereinafter referred to as the Commission, is authorized under section 10(f) of the Federal Power Act, as amended, 49 Stat. 843, 16 U.S.C.A. § 803(f), to assess reasonable and equitable charges against a power project owned by the United States for benefits received from a headwater project owned by a public agency of a state.

Grand River Dam Authority, hereinafter referred to as Authority, is a public corporation and agency of the State of Oklahoma, organized and existing under and by virtue of Article IV, Chapter 70, Session Laws of Oklahoma, 1935, as amended and supplemented, Chapter 8, Title 82 Oklahoma Statutes 1951. By such act, Authority was empowered to control, store, preserve, sell, and distribute waters of the Grand River and its tributaries in Oklahoma, and in connection therewith to generate and sell hydroelectric power. Pursuant to its legislative grant of power, Authority prepared a comprehensive plan which included construction of the Pensacola, the Markham Ferry, and the Fort Gibson Dams on the river for the production of electric energy. The Pensacola site was 77 miles, the Markham Ferry site 47 miles, and the Fort Gibson site 8 miles from the confluence of the Grand River with the Arkansas. The three dams and related works were to be constructed, operated, and maintained as a unified project. One purpose of the unified plan was to make the storage and headwater facilities at the Pensacola Dam available for beneficial use in connection wtih the Markham Ferry and the Fort Gibson Dams. In 1939, the Commission issued to Authority a license authorizing the construction of the Pensacola Dam, and the dam and reservoir were constructed in accordance with the license. By the Flood Control Act of 1941, 55 Stat. 638, Congress authorized the construction of the Pensacola, the Markham Ferry, and the Fort Gibson Dams under the direction of the Secretary of War, adapted to use in the development of hydroelectric power. Exercising such grant of authority, the dam at Fort Gibson was constructed for flood control and the development and generation of hydroelectric power; and in the operation of such project, benefits were and are derived from the headwater improvements and storage facilities of Authority at the Pensacola location. Authority petitioned the Commission to assess reasonable and equitable charges against the Fort Gibson project for the benefits received from the upstream project at the Pensacola site. Entertaining the view that it did not have authority under the Federal Power Act to make such an assessment against a project owned by the United States, the Commission denied the request; and Authority brought the proceeding here on review.

■■■ The Federal Power Act became law in 1920, 41 Stat. 1063, 16 U.S.C.A. § 791a et seq. Section 10 thereof specified the conditions upon which licenses should be issued for the construction, operation, and maintenance of dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation, and for the development, transmission, and utilization of power across and along the navigable waters of the United States. Subsection (f) provided that whenever any licensee thereunder was directly benefited by the construction work of another licensee, permittee, or of the United States of a storage reservoir or other headwater improvement, the Commission should require as a condition of the license that the licensee so benefited should reimburse the owner of such reservoir or other improvement for such part of the annual charges for interest, maintenance, and depreciation thereon as the Commission should deem equitable; that the proportion of such charges to be paid by any licensee should be determined by the Commission; and that whenever such reservoir or other improvement was constructed by the United States, the Commission should assess similar charges against any licensee directly benefited thereby and any amount so assessed should be paid into the Treasury of the United States to be reserved and appropriated as a part of the special fund for headwater improvements as provided in section 17 of the act. In 1935, the subsection was amended, 49 Stat. 843, by adding thereto the following critical provision:

"Whenever any power project not under license is benefited by the con-

struction work of a licensee or permittee, the United States or any agency thereof, the Commission after notice to the owner or owners of such unlicensed project, shall determine and fix a reasonable and equitable annual charge to be paid to the licensee or permittee on account of such benefits, or to the United States if it be the owner of such headwater improvement."

Authority relies entirely upon the added provision in the statute to empower the Commission to assess against the Fort Gibson project owned by the United States reasonable and equitable charges for benefits received from the Pensacola project. Prior to the amendment in the nature of an addition to the statute, the owner of a project not under license bore no duty in law to pay compensation for headwater benefits received from the construction of a licensed project. The Congressional purpose in adding the amendment to the statute was to impose upon owners of projects not under license the same obligation to pay compensation for headwater benefits that was then and theretofore borne by licensees. The purpose was to equate the duty of owners of non-licensed projects with that of owners of licensed projects in respect to the payment of compensation for headwater benefits. The reports of the Congressional committees make that legislative objective clear. Prior to the amendment of the statute, the United States, along with other owners of non-licensed projects, was privileged to accept benefits from headwater facilities without legal liability therefor in the nature of reasonable and equitable compensation. By the amendment, owners of non-licensed projects were thereafter denied that right or privilege. Instead, they were required to pay reasonable and equitable compensation for such benefits, to be fixed by the Commission. But the provision in the statute taking from such non-licensed projects the right or privilege which they previously enjoyed fails to mention the United States as an owner of a non-licensed project thereby made

liable for the payment of such compensation. It merely provides in general language that any project not under license which receives benefits from headwater improvements shall pay therefor reasonable and equitable compensation to be fixed by the Commission. And it is the well established rule of construction that the United States as a sovereign is not bound by a statute couched in general language without containing any specific reference to the United States in instances in which the statute operates to divest pre-existing rights or privileges. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; United States v. Wittek, 337 U.S. 346, 69 S.Ct. 1108, 93 L.Ed. 1406; Leiter Minerals, Inc., v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267. The rule rests upon the presumption against an intention to extinguish existing public rights or privileges. In re Tidewater Coal Exchange, 2 Cir., 280 F. 648, certiorari denied 260 U.S. 721, 43 S.Ct. 12, 67 L.Ed. 481.

■ Appropriate application of another well recognized rule of statutory construction lends strength to the view that the amendment to subsection(f) of the statute does not vest in the Commission power or authority to assess charges against the Fort Gibson project for benefits received from the headwater facilities at the Pensacola site. The subsection makes specific reference to the United States as one entitled under certain circumstances to receive compensation for headwater benefits. But no specific reference is made to the United States as one liable for the payment of compensation for benefits of that kind. In view of the specific reference to the United States in one instance and the absence of any specific reference to it in the other, there is no basis upon which it can be inferred or implied that Congress intended or purposed to include the United States among the owners of non-licensed projects liable for payment of compensation for upstream benefits. United States v. Atchison, Topeka and Santa Fe Railway Co., 220

U.S. 37, 31 S.Ct. 362, 55 L.Ed. 361; Corn Products Refining Co. v. Benson, 2 Cir., 232 F.2d 554.

The order of the Commission is Affirmed.