STATE OF INDIANA *v.* KUEBEL.

[No. 29,920. Filed January 31, 1961.]

*Edwin K. Steers*, Attorney General, *Phillip L. Bayt*, Prosecuting Attorney, and *John W. Tranberg*, Deputy Prosecuting Attorney, 19th Judicial Circuit, for appellant.

*Charles W. Symmes, Frank A. Symmes* and *George A. Henry*, all of Indianapolis, for appellee.

BOBBITT, C. J.—The State of Indiana prosecutes this appeal from a judgment of the Marion Criminal Court, Division One, sustaining appellee's motion to quash an amended affidavit charging him with the possession and sale of obscene matters in violation of Acts 1905, ch. 169, §462, as amended by Acts 1957, ch. 133, §1, p. 241, being §10-2803, Burns' 1960 Cum. Supp.

The sole error here assigned is, "That the Court erred in sustaining Appellee's Motion to Quash the Amended Affidavit."[1]

---

1. Count I of the amended affidavit, omitting formal parts, is as follows:

"[T]hat Ray Joseph Kuebel late of said County and State, on or about June 17, 1959, at and in the County and State aforesaid, did then and there unlawfully have possession of and offered for sale the following, to-wit: *Scene, Vol. 5, No. 4*, August, 1959 Issue the same being an obscene, lewd, indecent or lascivious book, pamphlet, paper, drawing, picture, or photograph, said

The motion to quash alleges that (1) the facts stated in each count do not constitute a public offense; (2) that each count does not state the offense with sufficient certainty; (3) that the facts stated are duplicitous, and (4) that the statute under which prosecution was commenced is unconstitutional in that it violates certain provisions of the Federal and State Constitutions, as are specifically set out in the motion, but we need not burden this opinion by repeating them here.

In our considered judgment the present case cannot be concluded upon other grounds[2] and we, therefore, proceed directly to a consideration of the constitutional questions presented, without regard to the others raised by the motion to quash.

*First:* Appellant concedes that if the statute is construed to require that the accused have knowledge of the nature of the book, article, pamphlet, etc., mentioned in the statute, then it would be constitutional, but if it "is construed to eliminate knowledge and impose strict liability"[3] then it violates the constitutional provisions which guarantee freedom of speech.[4]

The determinative question here then is: Does the statute (§10-2803, *supra*) eliminate all elements of *scienter?*

---

*Scene, Vol. 5, No. 4,* August, 1959 Issue, being too obscene, lewd, indecent and lascivious to be set out herein and to encumber the records of this Court, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

Counts II, III, IV, V and VI are the same as Count I, except a different book or pamphlet is charged.

2. See: *St., Gross Inc. Tax Div. et al. v. Pearson Constr. Co.* (1957), 236 Ind. 602, 607, 141 N. E. 2d 448.

3. See: Hall, Principles of Criminal Law, p. 280, for definition of "strict liability."

4. Article 1, §9, Constitution of Indiana; and Fourteenth Amendment of the Constitution of the United States.

To support its contention that while the statute does not use the word "knowingly" or "wilfully," this does not necessarily eliminate proof of knowledge, the State relies upon the following statement in *Thomas* v. *The State* (1885), 103 Ind. 419, 433, 434, 2 N. E. 808,

> "The statute, in defining the offence, does not use the word 'knowingly,' nor the word 'intentionally;' but, evidently, in order to make out the offence, it was necessary for the State to prove guilty knowledge on the part of appellant. It can not be conceded that if some other person had written the letter, put it in an envelope directed to Miss McQuinney, and so placed it with appellant's mail that he deposited it in the post-office without notice or knowledge, he would have been guilty of the offence charged. To so hold would be to turn an innocent oversight into a crime. This the statute was not intended to do. It is to punish the wicked and guilty, and not those who have neither knowledge of, nor intention in, the act."

In the Thomas case appellant was charged with violating §1997, R. S. 1881, by sending a "lewd and obscene letter to a young girl."

At page 437 of 103 Ind., this court further said:

> "Here, as we have seen, the gravamen of the offence is not the writing of the lewd and obscene letter, but the depositing of it in the post-office."

The question there for decision was: Did or did not the defendant-appellant deposit the letter in the post-office? The statement quoted above and upon which appellant relied, was made in connection with a consideration of the admission into evidence of other letters bearing the signature of Thomas, for the purpose of showing that he "knowingly" placed the letter in the post-office as charged in the affidavit.

The question of scienter or the imposition of strict

liability was not raised in the Thomas case, and the statement therefrom and to which reference is made by appellant, must be considered *dicta* insofar as its application to the question presently before us is concerned. Therefore, that case is not controlling here.

The legislative intent must control our decision here if it can be ascertained, and in determining this it is proper to consider the history of the statutory enactment involved. *Merchants Nat. Bank* v. *Delaware School Tp.* (1916), 185 Ind. 658, 666, 114 N. E. 450.

Section 10-2803, *supra,* and the statute involved in the Thomas case, (Acts 1905, ch. 169, §463, p. 584, being §10-2804, Burns' 1960 Cum. Supp.), were originally §1996 and §1997, R. S. 1881, respectively.

Subsequent to the decision in the Thomas case in 1885, the Legislature, in the 1905 session, re-enacted *verbatim,* in the parts here relevant, §1997, R. S. 1881, *supra,* as §463 of ch. 169, Acts 1905, except the word "knowingly" following the word "whoever" in the first line of the section was added, thus expressly providing for scienter.

Section 1996, R. S. 1881, *supra,* was, at the same time, re-enacted *verbatim,* in parts here relevant, as §462 of ch. 169, Acts 1905. However, in the re-enactment of §1996, *supra,* the 1905 session of the Legislature did not add the word "knowingly" as it did in the re-enactment of §1997, *supra.* This action seems to us to indicate a clear and unequivocal intention of the Legislature to impose strict liability in §10-2803, *supra,* without any element of *scienter* or knowledge on the part of the person charged. *State ex rel. Booth* v. *Beck Jewelry Enterprises* (1942), 220 Ind. 276, 282, 41 N. E. 2d 622, 141 A. L. R. 876; *United States* v. *Atchison, T. & S. F. R. Co.* (1911), 220 U. S. 37, 55 L. Ed. 361,

31 S. Ct. 362; *Grand River Dam Authority* v. *Federal Power Comm.* (1957), 10 Cir., 246 F. 2d 453, 455.

There are many instances in our criminal code where *scienter* or knowledge is made an element of the crime, and the Legislature has done so in specific and appropriate language as illustrated in each of the statutes mentioned in footnote 5.

The State also relies upon certain cases arising under a former intoxicating liquor law[6] in its efforts to persuade us to read into the statute here a requirement of knowledge. However, only one of these cases involved the question of knowledge and it is neither controlling nor persuasive here because of the difference in the questions involved.

Paraphrasing the words of Justice Brennan in *Smith* v. *California* (1959), 361 U. S. 147, 152, 4 L. Ed. 2d 205, 211, 80 S. Ct. 215, there is no specific constitutional inhibition against the imposition of strict liability in certain penal statutes, such as food and drug legislation, "but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller."

The statute in plain and simple language states "whoever sells . . . or offers to sell . . . or in any manner exhibits, or has in his possession, *with or without intent* to sell. . . ." (Emphasis supplied.) As may readily be observed, no requirement for *scienter* is expressly provided in the statute, but on the contrary the element of intent is expressly eliminated, and in our judgment if the Legislature had intended to make knowledge an element of the crime it would have spe-

---

5. Burns' 10-2101, False Claims; Burns' 10-2102, Forgery; Burns' 10-3017, Receiving Stolen Goods; Burns' 10-3018, Receiving Stolen Goods from Another State.

6. Acts 1925, ch. 48, §4.

cifically done so at the time it amended §1997, *supra,* in the manner above noted.

While we recognize that an act of the Legislature will be upheld if reasonably possible, yet, this rule does not require or authorize the court to amend a statute by judicial decree in order to sustain its validity.

The Supreme Court of the United States recently held in *Smith* v. *California, supra* (1959), 361 U. S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215, that a city ordinance of Los Angeles, California, which provided,

> "It shall be unlawful for any person to have in his possession any obscene or indecent writing, book, pamphlet, picture, photograph, drawing, figure, motion picture film, phonograph recording, wire recording or transcription of any kind in any of the following places: (Here naming them.),"

included no element of *scienter* and imposed a strict and absolute criminal liability on the person charged. At page 211, 4 L. Ed. 2d, the court said:

> "By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature."

The offense defined in the statute here in question consists solely of the sale or possession of certain articles found upon judicial investigation to be obscene, lewd, etc., as was the case in *Smith* v. *California, supra.* In our judgment the statutory

definition of the criminal offense here, as was true in the Smith case, includes no element of "scienter—knowledge of the book" and, as did the ordinance there, the statute here imposes a strict or absolute criminal liability.

*Second:* Does the statute involved herein, by its imposition of a strict and absolute criminal liability violate any provision of the Constitution of the United States or the Constitution of Indiana, as asserted by appellee?

Chief Justice Hughes declared for the United States Supreme Court in *Near* v. *Minnesota ex rel. Olson* (1931), 283 U. S. 697, 707, 75 L. Ed. 1357, 1363, 51 S. Ct. 625, as follows:

> "It is no longer open to doubt that the liberty of the press and of speech is within the liberty safeguarded by the due process clause of the 14th Amendment from invasion by state action. It was found impossible to conclude that this essential personal liberty of the citizen was left unprotected by the general guaranty of fundamental rights of person and property."

The Act here in question is subject to the same infirmities as was the Los Angeles ordinance, which was held in *Smith* v. *California, supra,* to be in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

If the Los Angeles ordinance is invalid because it tends seriously to restrict the freedom of speech and of the press, we are impelled to conclude that §10-2803, *supra,* also violates §1 of the Fourteenth Amendment to the Constitution of the United States for the same reasons. See: *Smith* v. *California, supra; People, etc.* v. *Engel* (1960), 7 N. Y. 2d 1002, 166 N. E. 2d 845.

Article 1, §9, of the Constitution of Indiana provides:

"No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible."

The State may in the proper exercise of the police power prevent the sale and distribution of obscene matter, but when this is attempted in a manner which tends to restrict the right of free speech or expression, then the right of free speech guaranteed by Art. 1, §9, *supra*, must be weighed in the balance against the requirements of the public safety and welfare which are asserted by the restriction sought.

When this test is applied to the situation with which we are now confronted, the scales weigh in favor of the right of free speech and free expression.

The imposition of a strict liability by the statute here has the effect of restricting the free interchange of thought and opinion by requiring a bookseller to act at his peril in the sale and distribution of books and periodicals, whether obscene or not obscene. Under such circumstances the bookseller will restrict and limit the books and periodicals stocked to those which, after inspection, he has found to be entirely free of any possibility of containing matter which might cause his summary arrest merely for having such items in his store. This type of censorship would result in preventing the sale and distribution of many books and periodicals which a court might finally determine not to be obscene, thereby imposing a censorship exceeding the boundaries which are prescribed by the limits beyond which the police power cannot operate.

Since the statute here, without making some requirement for scienter, i.e., knowledge of the contents of the

books, periodicals, pamphlets, etc., for the possession of which appellee here is charged, makes it a criminal offense for any person to sell, offer to sell, or have in his possession, obscene matters particularly described in the statute, tends to restrict and inhibit the right of free speech and impose a restraint upon the interchange of thought and opinion, it is invalid under the provisions of Art. 1, §9, of the Constitution of Indiana, *supra*.

*Third:* It is suggested that the entire section is not unconstitutional because of the strict liability feature since certain prohibited acts, such as the manufacture or printing of obscene literature, necessarily implies a knowledge of the contents.

While a single statute may be partially valid and partially invalid, a determination of whether or not it is severable rests ultimately upon a judicial determination of the legislative intent.

The purpose of the statute here was clearly to prevent the dissemination of literature or other media which tend to corrupt the morals of the community by prohibiting the sale, possession, advertisement or production by manufacturing or otherwise, of obscene, lewd, indecent, or lascivious books, pamphlets, or other articles of indecent or immoral use.

In determining the legislative intent we may properly consider the object which the Legislature sought to accomplish, but the test of severability is whether or not the Legislature would have passed the statute had it been presented without the invalid features. 2 Sutherland Statutory Construction, 3d ed., §2404, p. 179.

In our judgment the invalid part of §10-2803, *supra*, was the inducing cause for its enactment, the other provisions which prohibit acts such as the manufacture

or printing of the things, the sale and distribution of which was sought to be prohibited, being only incidental to and in aid of the main purpose.

In our judgment the principal purpose of the Act and the intent of the Legislature is defeated by the elimination of that part of it which we have declared to be invalid and, therefore, the entire section, §462 of ch. 169 of Acts 1905, as amended, being §10-2803, Burns' 1960 Cum. Supp., *supra,* is invalid and void. To hold otherwise would be changing the legislative intent. This the court may not do. Only the Legislature can do that. *Fairchild, Prosecuting Atty., etc.* v. *Schanke, et al.* (1953), 232 Ind. 480, 494, 113 N. E. 2d 159.

For the foregoing reasons the judgment of the trial court must be affirmed.

Judgment affirmed.

Landis and Jackson, JJ., concur.

Achor, J., dissents with opinion.

Arterburn, J., dissents with opinion.

### DISSENTING OPINION

ACHOR, J.—Appellee was charged in the State's amended affidavit in six counts of possession and offering for sale certain allegedly obscene magazines under the terms of §10-2803, Burns' 1956 Repl. (1960 Supp.) [being Acts 1957, ch. 133, §1, p. 241.] The relevant parts of this statute are as follows:

"Whoever sells . . . or offers to sell . . . or in any manner exhibits or has in his possession, with or without intent to sell, . . . lewd, indecent or lascivious book, pamphlet, paper, drawing, lithograph, engraving, picture, daguerreotype, photograph, stereoscopic picture, model, cast, instrument, or article of indecent or immoral use, . . . shall be

fined not less than twenty dollars [$20] nor more than one thousand dollars [$1,000], to which may be added imprisonment for not less than twenty [20] days nor more than one year; . . ."

As the case is presented to this court, both parties agree that the sole question to be decided upon this appeal is whether the law, above quoted, violates the freedom of speech and the freedom of press guarantees of the Indiana Constitution, Art. 1, Sec. 9 and the United States Constitution, Amend. 1. The question is presented solely upon the issue as to whether or not the statute above quoted eliminates altogether the element of scienter or knowledge from the offense. Therefore, a determination of this case rests solely upon this limited issue.

Appellee asserts that the recent case of *Smith* v. *California* (1959), 361 U. S. 147, 152, 154, is controlling of the issue here presented. In that case the United States Supreme Court held that the California ordinance which was construed by the state court as imposing strict liability for the possession or sale of obscene material was unconstitutional because it imposed an unreasonable burden on free speech as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

The legal basis upon which the decision in the Smith case is made to rest was stated by Justice Brennan, as follows:

"These principles guide us to our decision here. We have held that obscene speech and writings are not protected by the constitutional guarantees of freedom of speech and the press. *Roth* v. *United States*, 354 U. S. 476, 1 L. ed. 2d 1498, 77 S. Ct. 1304. The ordinance here in question, to be sure, only imposes criminal sanctions on a bookseller if in fact there is to be found in his shop an ob-

scene book. But our holding in Roth does not recognize any state power to restrict the dissemination of books which are not obscene; and we think this ordinance's *strict liability* feature would tend seriously to have that effect, by penalizing booksellers, even though they had not the slightest notice of the character of the books they sold. *The appellee and the court below analogize this strict liability penal ordinance to familiar forms of penal statutes which dispense with any element of knowledge on the part of the person charged,* . . . (Our italics.)

"We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; whether honest mistake as to whether its contents in fact constituted obscenity needed be an excuse; whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, *or might put on him the burden of explaining why he did not, and what such circumstances might be.* Doubtless any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene, but we consider today only one which *goes to the extent of eliminating all mental elements from the crime."* (Our italics.)

Thus the issue in this case is whether the Indiana statute [§10-2803] must be construed, as was the California ordinance, to eliminate all mental elements from the crime. In other words, does the statute deny the accused a reasonable opportunity of establishing a defense, excuse, or justification for the prohibited act? If such opportunity is denied the statute must be void for the reasons stated in the Smith case. However, if such opportunity is afforded the statute does not fall within the prohibition of the decision of the United States Supreme Court above cited.

In determining this question, we are guided by certain well established propositions of law and rules of statutory construction.

*One:* The United States Supreme Court, in deciding the Smith case was bound by the construction given the ordinance by the California courts for it is fundamental that the United States Supreme Court is bound by the construction of a state statute adopted by the state court of last resort, and it is then the duty of the United States Supreme Court to determine whether the act, as construed and applied, is repugnant to the restrictions of the federal constitution. *Ward & Gow* v. *Krinsky* (1921), 259 U. S. 503, 42 Sup. Ct. 529, 66 L. Ed. 1033. In other words, state courts are the exclusive judges of the construction placed upon their own law. Federal courts sitting in diversity cases look to the interpretations of the state courts in applying the state law to a particular case, rather than state courts looking to federal courts. This is not merely a matter of comity or respect for the state courts, but federal courts are bound to do so since the United States Supreme Court's holding in *Erie R. Co.* v. *Thompkins* (1938), 304 U. S. 64, 58 Sup. Ct. 817, 82 L. Ed. 1188. The only concern of the United States Supreme Court is to insure that the state court's interpretation does not run counter to the United States Constitution. The United States Supreme Court recently reiterated this basic principle in *Speiser* v. *Randall* (1958), 357 U. S. 513, 523, n. 7, 2 L. Ed. 2d 1460, 1471, n. 7, 78 Sup. Ct. 1332, 1340, n. 7, when they stated:

> ". . . A more fundamental objection to the suggestion, of course, is that it does violence to the basic constitutional principle that the construction of state laws is the *exclusive responsibility of the state courts.*" (Our italics.)

In the Smith case an ordinance of the City of Los Angeles prohibiting the possession of obscene materials was construed by the California courts as eliminating scienter. The United States Supreme Court adopted this construction, and at page 149 noted that such construction was necessary in order for the California courts to uphold the ordinance as permissible supplementary municipal legislation.

*Two:* Whenever this court is called upon to judge the constitutionality of a statute, the court will adopt an interpretation favoring constitutionality, if reasonably possible within the wording and meaning of the statute. In all instances where a court exercises the power to invalidate a statute, the conflict of the statute with the constitution must be *irreconcilable.* We should be extremely reluctant to strike down legislative enactments, especially where there has been long acquiescence (as is the case with this statute) and an unconstitutional intention should not be attributed to the legislature, if reasonably avoidable. It is our *duty* to avoid a construction of the statute which would render it unconstitutional if that result can be avoided. 5 I. L. E. *Constitutional Law,* §38 (1958) ; 26 I. L. E., *Statutes,* §175 (1900).

*Three:* There is nothing within the statute with which we are here concerned [§10-2803] to keep it from falling within the general rule that where knowledge or intent is not specifically made an element of the offense and it is proved that the accused committed the unlawful act charged, it will be *presumed* that the act was done with a criminal knowledge or intent. The presumption is *rebuttable,* the burden or rebuttal being on the accused. 22 C. J. S. *Criminal Law,* §34 (1961). In such instances lack of knowledge or criminal intent is available as an element of defense, the burden,

however, being on the defendant to go forward with such evidence. There is an abundance of authority in the decisions of this court supported by the United States Supreme Court for such a holding.[1] Illustrative is the case of *State* v. *Bridgewater* (1908), 171 Ind. 1, 8, 85 N. E. 715, which involved a statute which made the visitation of a gambling house a crime. We quote at length from that case as it bears light on our reasoning:

> "In case a statute, in defining a public offense, makes knowledge an essential element thereof, then the State, in a prosecution thereunder, must aver and prove such knowledge. Of course if the defendant in this case innocently visited the gambling-house in controversy, without having any knowledge or notice, either actual or constructive, of its character, then he would not, within the meaning or spirit of the law, be guilty of the offense with which he is charged, *and would have the right, under a plea of not guilty, to set up such facts as a defense to the prosecution.* It will be observed that the statute, in positive terms, declares a visit by any person to a gambling-house to be a penal offense, and as any such visit, *prima facie* or apparently, is a violation of the law, a legitimate excuse for making it must be shown by

---

1. Under the 1925 intoxicating liquor act, the legislature made it an offense, ". . . for any person to purchase, receive, manufacture, transport, ship, *possess, sell*, barter, exchange, give away, furnish, or otherwise handle, or dispose of any intoxicating liquor, except as authorized by this act. . . ." (Acts 1925, ch. 48, p. 144, §4.)

The word "knowingly," or words similar thereto, are omitted. However, in Molnar v. State (1931), 202 Ind. 669, 673, 177 N. E. 452, this court held that this statute merely raised a presumption, if one of the specific acts enumerated in the statute be proven. The court stated: "Appellant has failed to indicate the provision in our state Constitution which he construes as a 'due process of law' clause, or any other provision inhibiting the Legislature from passing the *prima facie* evidence phrase challenged by him. While the Legislature may declare proof of a fact *prima facie* evidence of the existence of another fact, yet the probative force of the latter fact would have no weight when rebutted by admissible evidence. Bailey v. State of Alabama (1911), 219 U. S. 219, 234, 31 Sup. Ct. 145, 55 L. Ed. 191."

the defendant as a defense to the prosecution. The state in its pleading is not required to anticipate or negative any defense which defendant may have. This rule is supported by the following authorities: . . . [This case here cites about 15 cases.] [Our italics.]

"In *Payne* v. *State, supra,* this court, by Elliott, J. said: 'The facts stated in the indictment make a case within the statute; and if there are any facts constituting a defense, the accused must show them. . . . Excuses and justifications must come in by way of defense; there is no such presumption of their existence as requires the State to allege that they do not exist.' "

For the reasons above stated, the statute in question, *supra,* can be construed as not imposing strict liability upon the accused for his act, but merely as creating a *presumption* of guilt if the act prohibited is proven; which presumption may, however, be dispelled upon proof of lack of knowledge or intent in defense, excuse or justification of the act. As stated by the United States Supreme Court in the case of *Speiser* v. *Randall supra,* 357 U. S. 513, 524:

". . . Of course, the burden of going forward with the evidence at some stages of a criminal trial may be placed on the defendant, but only after the State has 'proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, . . .' "

So construed, the application of §10-2803 is consistent with other similar statutes which have not been construed as imposing strict liability but have placed upon the defendant the burden of providing an excuse or explanation for his act. This construction of the law would serve to accomplish the obviously intended purpose of its enactment, which is to prohibit the pandering of "sick sex" materials which are designed to stimulate illicit sexual desires and evil designs and

passions of others; and by so construing the act, it will withstand the test of constitutionality as herein considered.

However, in support of its argument that §10-2803 is unconstitutional on the ground that it imposes strict criminal liability for the offense, appellee discusses the history of §§10-2803 and 10-2804, and the case of *Thomas* v. *State* (1885), 103 Ind. 419, 433, 434, which contained some dicta to the effect that knowledge was a necessary element of the latter offense [§10-2804]. Appellee cites the fact that originally neither §§10-2803, which deals with the possession and sale of obscene materials, nor §10-2804, which deals with the mailing of such materials, made knowledge or scienter a specific element of the respective offenses. Appellee further cites the fact that after the decision in the *Thomas* case, §10-2803 was re-enacted without change, whereas §10-2804 was amended by the addition of the word "knowingly." On the basis of this action, appellee asserts that there is "a clear and unequivocal intention of the legislature to impose strict liability in §10-2803 without any element of *scienter* or knowledge on the part of the person charged."

However, the conclusion drawn by appellee as to the decision in the *Thomas* case, and the subsequent legislation is not necessary. In the *Thomas* case, the *charge* was "that appellant knowingly, etc., placed a lewd and obscene letter in the post office." (Our italics.) Consistent with the form of the charge, this court, in discussing the statute, assumed that knowledge was a necessary element of the offense and that the burden of proving such knowledge was upon the State.[2]

---

2. The issue actually decided in Thomas v. State (1885), 103 Ind. 419, 434, was that, ". . . If, . . . guilty knowledge is an

Therefore, the legislature's re-enactment of §10-2803 verbatim, and the amendment of §10-2804, by the addition of the word "knowingly," can reasonably be construed as conveying a legislative intention that the legislature adopted the construction of §10-2804, as considered in the *Thomas* case, but that the legislature intended that the generally accepted rule should continue to apply as to §10-2803, as hereinbefore discussed; specifically, that upon proof of the facts enumerated in §10-2803, criminal knowledge will be presumed, but that lack of such criminal knowledge or intent, as an element of the offense, is available to the defendant as a defense.

I am aware that study needs to be given the law in question because of other possible infirmaties which are not considered in this case. However, in my opinion the law can and should be construed as constitutional, as related to the single issue here presented.

## DISSENTING OPINION

ARTERBURN, J.—The defendant was charged in Marion Criminal Court, Division 1, with possession and sale of certain obscene, lewd and indecent printed matter and photographs under Burns' §10-2803, 1960 Cum. Supp. The trial court sustained a motion to quash the affidavit on the ground that the statute was unconstitutional because it did not require any knowledge of the nature and contents of the printed matter or scienter by the one possessing and selling such obscene matter. The appellee was thereupon discharged by the court, and the State of Indiana prosecutes this appeal.

---

ingredient of the offence, . . ." it was proper to admit in evidence other similar letters, written by the accused to the prosecuting witness, in proof of knowledge as to the letter specifically described in the charge.

The statute is question does not use the words "knowingly" or "wilfully" or similar words in defining the offense. It is contended it thereby imposes a "strict liability."[1]

The decision of the trial court was based upon the recent case of *Smith* v. *California* (1959), 361 U. S. 147, 80 S. Ct. 215, 4 L. Ed. 2d 205. In that case the right of the state to legislate in the area of obscenity was reaffirmed, but it was held that such legislation cannot eleminate the requirement of a scienter of guilt on the part of the one charged with the alleged crime. The California Supreme Court had interpreted a statute similar to ours in Indiana as being one of strict liability, obviating the necessity of showing any guilty knowledge. Such legislation, the United States Supreme Court

1. Strict liability has been justified on the ground that it is, in effect, the imposition of a burden requiring the highest degree of care on the part of certain persons engaged in activities closely connected with the public welfare. The rationalization is that a breach of such law is evidence of criminal negligence and failure to use care in the public interest. Similar principles exist in certain actions imposing strict liability in tort.

Strict liability has been applied not only to pure food and drug distribution and traffic violations, but also to the selling of liquor to minors and to sex offenses against minors under a certain age. Ignorance of certain facts and even of the law where there is no guilty knowledge are cases of strict liability. Wharton's Criminal Law (Anderson), Vol. 1, §§157, 158, 159, 160, 161 and 162, pp. 381-390.

Strict liability is not simply an imposition of liability without fault, but rather the imposition of liability where there is a strong presumption of fault resulting from negligence or an unwillingness to learn the facts, which a normal person should know in connection with the transaction involving the public welfare.

See also: Hall, *General Principles of Criminal Law*, pp. 280, 299. ". . . The view generally entertained is that the distribution of impure or adulterated food for consumption is an act perilous to human life and health, and cannot be made innocent and harmless by the want of knowledge or by the good faith of the seller. It is the act itself, not the intent, that determines the guilt for the actual harm to the public is the same in one case as in the other. A restaurant keeper who unknowingly serves adulterated food in his place of business is responsible under the statutes penalizing the sale of adulterated articles." Wharton's Criminal Law (Anderson), Vol. 3, Sec. 1066, p. 283.

opined, infringed upon the constitutional guarantee of freedom of speech.

First and Fourteenth Amendments to the Constitution of the United States.

Justice Brennan in that case said in part:

". . . By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. . . ." 361 U. S. at p. 153.

and the court quotes with approval the statement:

". . . 'Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience. The King v. Ewart, 25 NZLR 709; 729, (CA). . . .'" 361 U. S. at p. 153.

In that case Judge Brennan attempts a rationalization between the strict liability imposed under the Pure Food and Drug Acts which have been held constitutional, and that in the case of obscene printed matter and pictures. He says:

". . . The usual rationale for such statutes is that the *public interest* in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors—in fact an absolute standard which will not hear the distributor's plea as to the amount of care he has used. Cf. *United States* v. *Balint*, 258 U. S. 250, 252-254, 66 L. ed. 604, 607, 42 S. Ct. 301. His ignorance of the character of the food is irrelevant. There is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of

the press stand in the way of imposing a similar requirement on the bookseller. . . ." (Our italics.)

This rationale is difficult for us to follow. It first assumes that constitutional provisions protecting property, contracts and personal liberty are not as sacred or precious as that of freedom of speech. This assumption further gives no consideration to the constitutional exercise of police power and the protection of the public morals as well as health. In other words, it defines a freedom of speech far beyond the limitations which surround other constitutional guarantees of personal liberty, property and contract, all of which may be cut down by any reasonable legislation for the protection of the public under the police powers.[2]

In *Roth* v. *United States* (1957), 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (where the statute con-

---

2. See the more recent cases of *Shelton* v. *Tucker; Carr* v. *Young* (December 12, 1960), — U. S. —, 81 S. Ct. 247, 5 L. Ed. 2d 231, where the right of a local school board to inquire into the organizations to which applicants to teach school belonged or were affiliated, was held to be under some theory of free speech an infringement thereon. There the court, assuming to determine the wisdom of legislative policy, said: "In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose." We ask, who under the constitution has the function and power to determine whether the "means for achieving the same basic purpose" shall be "less drastic"? May the judiciary take over such policy-making functions of a legislative body? Judges should always guard against letting their personal views override legal logic.

The expansion by the United States Supreme Court of the clause "to regulate commerce . . . among the several states" (Art. I, §8(3) U. S. Const.) is amazing to behold, since the court never seemed to consider in testing congressional legislation in that field whether the "means for achieving the same basic purpose" could not have been accomplished by "less drastic means." *Darr* v. *Mut. Life Ins. Co. of N. Y.* (1948), 169 F. 2d 262, Cert. Den. 335 U. S. 871, 69 S. Ct. 166, 93 L. Ed. 415 (Elevator Operators and Janitors); *Martino* v. *Michigan Window Cleaning Co.* (1945), 327 U. S. 173, 665 S. Ct. 379, 90 L. Ed. 603 (Window Cleaning and Painting).

tained the element of scienter) the United States Supreme Court had previously said:

"We hold that obscenity is not within the area of constitutionally protected speech or press."

To hold that the police power can only be exercised against obscene, lewd and indecent matter where there is a scienter or guilty knowledge, but that it may be exercised against impure foods and drugs on a strict liability basis without a guilty knowledge, is to make a distinction which is not warranted under any wording of the Constitution of the United States. If strict liability is permissible under the constitution, then it is a matter of legislative policy as to the cases in which it should be invoked. The holding places a court in the function of legislating.

We point out that the Smith Case for some reason gives no consideration to the effect upon the Federal Communications Act, which regulates the licensing and number of radio and television stations and to some extent what they may program and broadcast. 47 U. S. C. §151. This act fixes a strict liability and provides that a license may be suspended where profane and obscene language or meaning are used. The distinction is made plain since the section immediately following requires the element of *scienter*.

The act authorized the suspension of the license of any operator who:

"(D) . . . has transmitted superfluous radio communications or signals or communications containing profane or obscene words, language, or meaning, *or has knowingly transmitted—*

"(1) false or deceptive signals or communications, or . . ." (Our italics.) 47 U. S. C. §303 (m) (1) (D); *Radio Comm'n* v. *Nelson Bros. Co.* (1933), 289 U. S. 266, 53 S. Ct. 627, 77 L. Ed.

1166; *Trinity Methodist Church, South* v. *Federal Radio Com'n* (1932), 61 App. D. C. 311, 62 F. (2d) 850.

Radio and television communication are regulated and limited as to the number of broadcasting stations, the character and type of programs and in various other aspects. Were it not so, this field would be in complete chaos within a short time. Interference would be so complete that little, if any, effective communication would result. It is contended that Congress, under the power to regulate commerce among the states, has a right thus to infringe upon freedom of speech to a degree that far transcends by comparison the slight inconvenience placed upon a bookseller to assure himself that the materials he offers for sale are not obscene, lewd and indecent. At the same time the Supreme Court rationalizes that the police power may place on a drug or food dealer the burden of informing himself as to the purity of his product for protection of the public health.

Under the Federal Communications Act the United States Supreme Court has held that the FCC may use as a standard in determining what may or may not be broadcast, the Criminal Code, which makes broadcasting of information concerning lotteries a crime, as well as the broadcasting of obscene and profane matter. The words of scienter "knowingly" or "wilfully" are omitted from the criminal statute. 18 U.S.C.A. §§1464 and 1304.

In approving this legislation the United States Supreme Court said in a case involving "give away" programs:

> "Like the court below, we have no doubt that the Commission, concurrently with the Department of Justice, has the power to enforce Section 1304. Indeed, the Commission would be remiss in its du-

ties if it failed, in the exercise of its licensing authority, to aid in implementing the statute, either by a general rule or by individual decisions." *Federal Commun. Com'n* v. *American Broad. Co.* (1953), 347 U. S. 284, 74 S. Ct. 593, 98 L. Ed. 699.

If freedom of speech regarding lotteries, profane and obscene matter may be restricted in radio and television broadcasting without a scienter, then certainly the same matter may be restricted in the hands of a bookseller.[3]

Lewdness and obscenity are not within the area of constitutionally protected speech, since such matter is utterly without redeeming social features. *Roth* v. *United States* (1957), 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498. The police power may be exercised in the restraining of recognized social evils to the same extent as the interstate commerce clause may be utilized.

The Constitution does not say that the commerce clause of the Constitution may restrict to a greater degree free speech than does the police power (reserved to the states) regardless of all the semantics employed. The exercise of police power is just as constitutional and as potent as the exercise of the power to regulate interstate commerce. Neither has any greater or lesser right to infringe upon free speech. We fail to follow the tortuous path by which different results are reached.

Police power many times cuts down the unlimited areas of personal liberty, including freedom of speech and other constitutional guarantees. This is done to protect society and social interests. Constitutional guarantees must yield to "reasonable" exercise of the

---

3. For a collection of cases on control of obscenity in radio and television, see: Emerson and Hober, *Political and Civil Rights in the U. S.* [2 Ed., Vol. 2, p. 941].

police power. It is a constitutional principle too long established to question.

No right, constitutional, fundamental or otherwise, is absolute and unlimited in this society of ours. In the nature of things, no rights can be absolute and unlimited—not even life and personal liberty—if we are to live with our neighbors. We are restrained even on the streets and on the highways in our liberties for the benefit of all. The police power intervenes in our daily relations with others to eliminate friction and in order that the fundamental rights of one may not infringe upon the fundamental rights of another member of such society. Absolute and unlimited freedom for everyone in a society is only the reverse side of the coin of anarchy. No government of law and order would be possible under the doctrine of unlimited freedoms. Speech cannot in an organized society be totally unrestrained.

Is the judiciary so omnipotent that it can assume the legislative policy-making function and say what, under the police power is the best legislation for a particular locality, or that it is in the "public interest" to protect the stomach from rotten food, but not the mind from rotten obscenity and indecency? Should the judiciary or the legislature say that physical health is more important than mental health?

Is there a greater danger to freedom of speech in placing upon the bookseller the responsibility of inspecting and knowing what he offers to the public than in placing upon a broadcaster the responsibility for profanity, lewdness and obscenity over the radio or on the television screen, which readily reach the young and impressionable? The Smith Case manifests such inconsistency and an infringement upon the legislative function.

There has been considerable recent public agitation over sex crimes. Is this a matter of concern for the courts or the legislature? May not a legislature determine that sexual crimes are increasing and therefore, as a matter of public policy, decide that strong and strict measures (through legislation fixing a strict liability) are necessary to reduce obscene, lewd and indecent matter which encourages sex crimes?

I do not believe the judiciary is the sole repository of wisdom and good judgment, but rather that a goodly portion of such talent and ability was reserved for use by the legislative branches of the government under the constitutional functions of determining what is best for the people. Although I cannot always agree with the wisdom of such legislative action, I will still fight for the right of the legislative branch of the government to do what it thinks best within its constitutional function of law making. It is set up for that purpose because it is more representative of the will of the people in a democratic form of government, than is the judiciary. It is not within the province of the judiciary to determine whether or not the "means for achieving the same basic purpose" in legislation could have been accomplished by "less drastic means."[4] Such a standard for constitutional measurements of legislation turns over to the court the discretion, judgment and wisdom reposed with the legislative branch of government under the constitution.

If the imposition of strict liability is constitutional (as the United States Supreme Court has held in the Pure Food and Drug Act Cases) then it is a matter for the legislature rather than the courts to determine

4. *Shelton* v. *Tucker; Carr* v. *Young* (December 12, 1960) — U. S. —, 81 S. Ct. 247, 5 L. Ed. 2d 231.

when, as a matter of policy, public welfare requires the imposition of such strict measures.

The United States Constitution says:

"This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties . . . shall be the supreme law of the land; *and the judges in every state shall be bound thereby,* . . ." (Our italics.) Article VI, cl. 2, United States Constitution.

It is to be noted that this constitutional provision says that the judges "in every State shall be bound" by the United States Constitution, as well as the respective state constitution under which they serve. We state judges take the same oath to uphold the Constitution of the United States as do members of the United States Supreme Court. We have the same obligation to uphold and interpret that Constitution. Under that mandate we would be derelict in our duty should we fail to state our interpretation of the provisions of the Constitution of the United States and to "be bound thereby."

There is nothing commendable or honorable, after taking an oath, to uphold the Constitution of the United States and of the State of Indiana in submitting meekly to what appears to be an obvious inconsistent encroachment upon the rights of local self-government guaranteed by the United States Constitution under the powers reserved to the states. Under my oath of office I refuse to be carried along with a philosophy which ignores specific provisions of the United States Constitution with reference to powers reserved to the states, including the police power to restrict the sale of obscene and indecent matter within its borders.

We hold that the Constitution of the United States does not prohibit the reasonable exercise of the police power of a state in restricting the sale of obscene and

indecent matter. It is a matter of legislative policy to determine whether or not conditions warrant the imposition of strict liability in the eradication of evils which are injurious to the public health or morals. The constitution does not concern itself with the question of strict liability. If the imposition of strict liability is constitutional in some cases, then we find nothng prohibiting its imposition in other cases where the legislature sees fit.

What we have said regarding the meaning of the Constitution of the United States is likewise true of the Constitution of the State of Indiana which states:

> "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: *but for the abuse of that right, every person shall be responsible."* (Our italics.) Article 1, §9, Constitution of Indiana.

The Constitution of our State recognizes a reasonable limitation upon the freedom of speech and the responsibility of a person with regard thereto. Apparently the framers of the Indiana Constitution had no real concern about censorship growing out of a reasonable restraint to avoid the abuse from an unlimited use of such right.[5]

---

5. "The guarantee gives immunity from liability from no form of social control which is a proper exercise of the police power as understood by the Supreme Court of the United States. In other words, just as the Supreme Court controls what the courts may enjoin before publication so it controls what the legislatures may make punishable after publication. This is the doctrine of the Supreme Court so far as concerns the Fourteenth Amendment. That makes freedom of speech and of the press vary as due process of law varies. In its interpretation of the due process clause the Supreme Court has not adopted the meaning which the words 'due process of law' had at the time of the adoption of the constitutional provisions but whatever meaning it thinks is reasonable at the time of the decision of each particular case." Willis, Hugh, *Freedom of Speech And Of The Press,* 4 Ind. L. J. 445.

The trial court erred in sustaining the motion to quash the charge.

NOTE.—Reported in 172 N. E. 2d 45.