## PEOPLE v. VILLANO.

1. CONSTITUTIONAL LAW—FREEDOM OF SPEECH AND PRESS—OBSCENITY.

   Obscene speech and writings are not protected by the constitutional guarantees of freedom of speech and the press.

2. SAME—OBSCENITY—STATUTES—SCIENTER.

   A State statute which imposes a penalty for the sale or distribution of obscene literature, recordings or images without regard to *scienter*, constitutes too severe a limitation upon the public's right of access to constitutionally protected matter (US Const, Ams 1, 14; Mich Const 1908, art 2, §§ 1, 16; PA 1931, No 328, § 343a, as added by PA 1957, No 257).

3. INDICTMENT AND INFORMATION—SCIENTER.

   Appropriate recognition of the fact that *scienter* is an element of an offense must be made in charging the offense.

4. STATUTES—AMENDMENT—INTENT.

   Presumably an amendment to an existing statute, or the re-enactment thereof in an amended form, is regarded as indicative of an intent to change the existing law.

5. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES—OBSCENITY—SCIENTER—COURTS.

   The interpretation of statute imposing a penalty for the mere sale or possession of obscene literature, recordings, or images, without regard to *scienter*, presents a judicial question which must necessarily be decided by the courts (PA 1931, No 328, § 343a, as added by PA 1957, No 257).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am Jur, Constitutional Law §§ 319–323.
[2] 11 Am Jur, Constitutional Law §§ 321–323.
[3] 27 Am Jur, Indictments and Informations § 69.
[4] 50 Am Jur, Statutes §§ 275, 276.
[5] 50 Am Jur, Statutes § 219.
[6] 50 Am Jur, Statutes §§ 472–474.

6. CRIMINAL LAW—OBSCENITY—STATUTES—VAGUENESS—UNCERTAIN-
TY.

    Claim that State statute imposing a penalty for sale or distribu-
        tion "of any obscene, lewd, lascivious, filthy, indecent or dis-
        gusting book, magazine, pamphlet, newspaper, story paper, writ-
        ing, paper, phonograph record, picture, drawing, photograph,
        motion picture film, figure, image, wire or tape recording or any
        written, printed or recorded matter of an indecent character
        which may or may not require mechanical or other means to be
        transmuted into auditory, visual or sensory representations of
        such character shall be guilty of a misdemeanor" was too vague
        or uncertain *held,* without merit (PA 1931, No 328, § 343a, as
        added by PA 1957, No 257).

Appeal from Recorder's Court of Detroit; Koscin-
ski (Arthur J.), J.   Submitted January 9, 1963.
(Calendar No. 14, Docket No. 49,776.)   Decided
March 7, 1963.

Patsy Villano was charged with possession of
obscene and indecent literature with intent to sell.
Motion to suppress evidence and quash information
denied.  Defendant, on leave granted, appeals.  Re-
versed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Samuel H. Olsen,*
Prosecuting Attorney, *Samuel J. Torina* and *Angelo
A. Pentolino,* Assistant Prosecuting Attorneys, for
the people.

*Max E. Klayman* and *George Stone (Lawrence J.
Ellenbogan,* of counsel), for defendant.

*Amicus Curiae:*

*Rolland R. O'Hare, Erwin Ellmann,* and *Bruce A.
Miller,* for American Civil Liberties Union of Mich-
igan, asking reversal.

CARR, C. J. This criminal prosecution was instituted in the recorder's court of the city of Detroit for an alleged violation of section 343a of the Michigan penal code* added to the code by PA 1957, No 265. Said added section read as follows:

"Sec. 343a. Any person who sells, lends, gives away, distributes, shows or transmutes or offers to sell, lend, give away, distribute, show or transmute, or has in his possession with intent to sell, lend, give away, distribute, show or transmute, or advertise in any manner, or who otherwise offers for loan, gift, sale, or distribution, any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, story paper, writing, paper, phonograph record, picture, drawing, photograph, motion picture film, figure, image, wire or tape recording or any written, printed or recorded matter of an indecent character which may or may not require mechanical or other means to be transmuted into auditory, visual or sensory representations of such character, shall be guilty of a misdemeanor, and upon conviction shall be punished by imprisonment in the county jail for not more than 1 year or by a fine of not more than $1,000, or by both such fine and imprisonment." CL 1948, § 750.343a (Stat Ann 1959 Cum Supp § 28.575[1]).

The complaint and warrant in the case charged that defendant on to-wit the 7th day of August, 1961, at the city of Detroit, Wayne county, Michigan, "did then and there have in his possession with intent to sell obscene, lewd, lascivious, filthy, indecent or disgusting magazines containing obscene pictures. PA 1957, No 265, § 343a, contrary to the form of the statute, etc." An examination on the charge against defendant was held at which proof was offered on behalf of the people to the effect that

---

* PA 1931, No 328, as amended (CL 1948, § 750.1 *et seq.*, as amended [Stat Ann 1962 Rev § 28.191 *et seq.*]).

a member of the police force of the city of Detroit was in proximity to defendant's place of business at 561 Michigan avenue, said city, about 2:30 in the afternoon, that a bookstore business was conducted at said address, that the officer was standing on the sidewalk looking into the window, and that he observed defendant and another man examining magazines containing pictures of nude individuals which the witness characterized as indecent. Following such observation the officer in question summoned his sergeant who was in an adjacent place of business and returned with him to defendant's store. It was claimed that the officers asked defendant, after identifying themselves, if he had any objections to their looking around, and that on receiving a negative answer the officer who had made the claimed observations stepped behind the counter and removed therefrom a paper bag from which defendant and the other person referred to had taken the magazines or books that they were examining. It was further claimed that said bag contained indecent publications.

On the basis of the publications contained in said bag, which the officers took with them, the complaint was made and warrant issued, the arrest taking place on August 8th. On the examination the contents of the bag were offered in evidence and received over the objection by defendant's counsel based on the claim that they were taken as the result of an unlawful search and seizure.

Defendant was held for trial on the charge set forth in the complaint and warrant, and an information was filed by the prosecuting attorney of the county on September 11, 1961, charging defendant with the possession of obscene literature in violation of the statute, with intent to sell, the language of the information following that of the complaint and warrant. Motion to suppress and to quash the infor-

mation was filed December 22, 1961, on behalf of defendant, alleging the unlawful search and seizure claimed and further asserting that the arrest of the defendant was unlawful, that the proofs on the examination failed to establish probable cause that a crime was committed, that the exhibits offered in evidence were not of an obscene nature, and in substance that the statute under which the prosecution was instituted was invalid. The motion was denied, and on leave granted defendant has appealed from the order denying his motion to suppress and to quash the information.

As reference to section 343a of the penal code, above quoted, will disclose, the legislature did not require in the enactment of 1957 that the act of possession of obscene literature with intent to sell must be committed "knowingly" (or any equivalent expression), in order to be punishable. The section was amended in this respect by PA 1961, No 217 (Stat Ann 1961 Cum Supp § 28.575[1]), by inserting therein the word "knowingly." The amendatory act became effective on September 8, 1961.

The principal question at issue in the case is whether the section quoted, as enacted in 1957, was constitutional. On behalf of appellant it is insisted that the failure of the legislature to specifically provide that *scienter* should be a necessary element of the offense sought to be created rendered said section open to the objection that in the form adopted it violated the provisions of State and Federal constitutions providing for due process and equal protection of the law.* Reliance is placed on the decision of the United States supreme court in *Smith* v. *California*, 361 US 147 (80 S Ct 215, 4 L ed 2d 205), which involved the validity of an ordinance of the city of Los Angeles, California, in effect declaring

---

* US Const, Am 14; Mich Const 1908, art 2, §§ 1, 16.—REPORTER.

it to be unlawful for any person to have in his pos-
session any obscene or indecent writing in a place
of business where books were sold or kept for sale.
The ordinance was construed as authorizing convic-
tion of a violation thereof on proof of possession of
objectionable publications. It was not specifically
provided that knowledge as to the nature and con-
tents of the publications involved was an essential
element of guilt. The State courts sustained the
ordinance, but the Federal supreme court reversed.
After referring to prior decisions, it was said (pp
152, 153, 155):

"These principles guide us to our decision here.
We have held that obscene speech and writings are
not protected by the constitutional guarantees of
freedom of speech and the press. *Roth* v. *United
States,* 354 US 476 (77 S Ct 1304, 1 L ed 2d 1498).
The ordinance here in question, to be sure, only
imposes criminal sanctions on a bookseller if in fact
there is to be found in his shop an obscene book.
But our holding in *Roth* does not recognize any State
power to restrict the dissemination of books which
are not obscene; and we think this ordinance's strict
liability feature would tend seriously to have that
effect, by penalizing booksellers, even though they
had not the slightest notice of the character of the
books they sold. The appellee and the court below
analogize this strict liability penal ordinance to
familiar forms of penal statutes which dispense with
any element of knowledge on the part of the person
charged, food and drug legislation being a principal
example. We find the analogy instructive in our
examination of the question before us. The usual
rationale for such statutes is that the public interest
in the purity of its food is so great as to warrant
the imposition of the highest standard of care on
distributors—in fact an absolute standard which will
not hear the distributor's plea as to the amount of
care he has used. *Cf.* *United States* v. *Balint,* 258

US 250, 252–254 (42 S Ct 301, 66 L ed 604). His ignorance of the character of the food is irrelevant. There is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller. By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. It has been well observed of a statute construed as dispensing with any requirement of *scienter* that: 'Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience.' *King* v. *Ewart* (CA), 25 NZ LR 709, 729. * * *

"We have said: 'The fundamental freedoms of speech and press have contributed greatly to the development and well-being of our free society and are indispensable to its continued growth. Ceaseless vigilance is the watchword to prevent their erosion by congress or by the States. The door barring Federal and State intrusion into this area cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests.' *Roth* v. *United States, supra,* at 488. This ordinance opens that door too far. The existence of the State's power to prevent the distribution of obscene matter does not mean that there can be no constitutional barrier to any form of practical exercise of that power. *Cf. Dean Milk Co.* v. *City of Madison,* 340 US 349

(71 S Ct 295, 95 L ed 329).   It is plain to us that
the ordinance in question, though aimed at obscene
matter, has such a tendency to inhibit constitution-
ally protected expression that it cannot stand under
the Constitution."

The above decision was declared to be controlling
in *City of Cincinnati* v. *Marshall,* 172 Ohio St 280
(175 NE2d 178).   There, as in the Los Angeles case,
the municipal ordinance involved declared it to be
a misdemeanor to possess or sell obscene literature
or pictures.   On behalf of defendant the constitu-
tionality of said ordinance was assailed on the
ground that because *scienter* was not included as an
essential element of the offense the First and Four-
teenth Amendments of the Federal Constitution were
violated.   Other grounds of invalidity were also
urged.   A number of magazines were seized by
police officers in defendant's warehouse.   Fourteen
such publications were admitted in evidence at the
trial, defendant being convicted.   Such conviction
was upheld in the court of common pleas and sub-
sequently in the court of appeals.   In determining
that the decision in *Smith* v. *California, supra,* was
controlling, it was said, in part (p 283):

"So far as the Cincinnati ordinance (section 901–
i3) makes criminal liability absolute on mere proof
of possession of obscene matter, without regard to
*scienter* or knowledge, the Los Angeles and the Cin-
cinnati ordinances are indistinguishable.
"The city in this case has made no attempt to make
defendant's knowledge of the contents of the mag-
azines herein evidence a part of its case.   In fact,
after defendant's counsel, on examination of defend-
ant, asked whether he, defendant, had seen the mag-
azines which formed the basis of the charge against
him, the city's counsel interposed an objection to the
question on the ground that any answer to such

question would be irrelevant to the issues in this case.

"In addition, the trial judge indicated his belief that the ordinance in question imposed absolute liability on defendant upon mere proof of possession, by virtue of his instructions to the jury to the effect that defendant's intentions were immaterial in determining his guilt."

The court further quoted from the opinion of the United States supreme court, concluded that the decision rendered in the *Smith Case* was controlling, and that the Cincinnati ordinance was invalid because in conflict with the First and Fourteenth Amendments to the Federal Constitution. See, also, *State* v. *Kuebel,* 241 Ind 268 (172 NE2d 45), in which a statute similar in substance and form to the Michigan act here involved was declared to be invalid on constitutional grounds.

On behalf of the people it is argued in the instant case that the statute involved may be said to include *scienter* as an element of the offense in question. Our attention is not directed to any specific provision of the statute that may be so construed. Had the legislature intended to require knowledge on the part of the accused with reference to the character of the publications in his possession and intended for sale, we think that such requirement would have been manifested in some form as was done by the legislature in the re-enactment of the section of the penal code in question by PA 1961, No 217. It may be noted in this connection that the complaint, warrant, and information, in the instant case contained no allegation with reference to knowledge on the part of the defendant as to the character of the publications involved or the matter contained therein. If *scienter* was in fact an element of the offense under the statute as enacted in 1957, appropriate recogni-

tion of that fact should have been made in charging the offense. *People* v. *Frederighi,* 192 Mich 165.

It is further suggested in argument on behalf of the people that the re-enactment of section 343a of the penal code at the legislative session of 1961, and the inclusion of the word "knowingly" therein, should be regarded as indicating the intent to include the element of *scienter* in the offense defined by said section as enacted in 1957. With this argument we are unable to agree. Presumably an amendment to an existing statute, or the re-enactment thereof in an amended form, is regarded as indicative of an intent to change the existing law. It is significant in this respect that the act of 1961 followed the decision in *Smith* v. *California, supra.* Furthermore, the interpretation of the enactment under which prosecution in the instant case was brought presents a judicial question and as such must necessarily be decided by the courts. *Hood Rubber Company* v. *Commissioner of Corporations & Taxation,* 268 Mass 355 (167 NE 670, 70 ALR 1).

The conclusion cannot be avoided that in the instant case the section of the penal code under which the prosecution was brought was invalid on the ground that it conflicted with the provisions of the Federal Constitution on which the decision in *Smith* v. *California, supra,* was based. The further objections raised as to the alleged uncertainty and vagueness of the statute in dealing with obscenity and other like terms would seem to be without merit in view of the language of the court in *Roth* v. *United States,* 354 US 476 (77 S Ct 1304, 1 L ed 2d 1498). See, also, *People* v. *Ring,* 267 Mich 657 (93 ALR 993); *People* v. *Visel,* 275 Mich 77; *People* v. *Szymanski,* 321 Mich 248. The *Roth Case* involved prosecution for the alleged offense of mailing obscene and indecent publications. Much that was there said, however, is entitled to consideration in a

case of the nature before us. The *Roth Case* was referred to in *Sunshine Book Co.* v. *Summerfield, Postmaster General,* 355 US 372 (78 S Ct 365, 2 L ed 2d 352), and in *Manual Enterprises, Inc.,* v. *Day, Postmaster General,* 370 US 478 (82 S Ct 1432, 8 L ed 2d 639). Both of these cases were based on the Federal statute relating to mailing of obscene or indecent publications and, hence, cannot be said to be in point insofar as the factual situations are concerned.

The conclusion reached on the main issue in the case renders it unnecessary to consider other questions discussed by counsel on the oral argument of the case and in their briefs. The decision of the supreme court of the United States in *Smith* v. *California, supra,* is necessarily controlling on the questions raised under the Federal Constitution. The case is remanded to the recorder's court with directions to set aside the order denying defendant's motion and to quash the information and discharge the defendant.

DETHMERS, KELLY, KAVANAGH, OTIS M. SMITH, and O'HARA, JJ., concurred with CARR, C. J.

SOURIS, J. (*concurring*). Agreeing as I do with the Chief Justice's reasoning and conclusion that omission from the statute of the requirement of *scienter* renders the statute unconstitutional and requires our reversal and remand, I see no reason for this Court to consider the defendant's additional claim that the statute was unconstitutionally vague and uncertain. Judicial determination of that claim is unnecessary to our decision and, for that reason, I refrain from joining in the Chief Justice's opinion.

BLACK, J., concurred with SOURIS, J.